**SPECTACULAR PROMOTIONS, INC.,**
**Plaintiff,**

v.

**RADIO STATION WING, Defendant.**
**No. 67 Civ. 227.**

United States District Court
E. D. New York.

Sept. 1, 1967.

Nixon, Mudge, Rose, Guthrie, Alexander & Mitchell, New York City, for defendant; Robert Thomajan, New York City, of counsel.

## OPINION AND ORDER

WEINSTEIN, District Judge.

WING, a Dayton, Ohio, radio station, moves to dismiss this action for unfair competition on the ground that the court has not acquired jurisdiction. The motion is granted.

Plaintiff, Spectacular, a New York corporation, with offices in Islip, New York, promotes auto demolition derbies throughout the United States. In 1964, WING entered into a contract in Ohio with Spectacular for the purchase of thirty-two spot announcements to promote a demolition derby in Ohio. The complaint alleges that the commercials consisted of a "short pre-paid announcement * * * [which] had special sound effects * * * [and which was] plaintiff's own literary creation and property." Subsequent to the broadcast of the spot announcements, WING "wrongfully and willfully altered and printed plaintiff's tape" by using it to advertise another Ohio speedway.

WING was served by delivery of process to Robert E. Eastman & Co., at Eastman's New York City office, as agent for WING. Allegedly, Eastman is a "parent national radio network station and WING is an affiliate station of Eastman, being under the control and direction of said parent station. Eastman also is an agent for WING in the State of New York selling and soliciting advertising time for WING in New York with the knowledge and consent of WING."

▮ We turn to New York law to determine whether in personam jurisdiction was acquired. Fed.R. Civ.Proc. 4 (e). Under New York law such jurisdiction must be based on the fact either that defendant was "doing business" (in the traditional sense) in New York (CPLR 301) or that plaintiff was injured in New York (CPLR 302(a) (3)).

Murray Bogatin, Sayville, N. Y., for plaintiff.

## DEFENDANT NOT DOING BUSINESS IN NEW YORK

■ The activities of WING and its advertising agent, Eastman, do not meet the traditional "doing business" test of CPLR 301. From 1964 to 1966, Eastman has solicited an average yearly volume of $80,000 in advertising from New York-based advertising purchasers on behalf of WING. This is some 5% of WING's average annual income and less than 2% of the average annual business obtained by Eastman for all of its many station clients.

WING's own advertising material carries the "Eastman Network Member" clasped hand symbol and the statement that it is "Affiliated with Eastman Network." Eastman's advertising states that WING and forty-two other stations are "members of the Eastman Network." Nevertheless, the Eastman Network is not a radio network in any economic, operating or administrative sense. Rather, Eastman is, at most, an exclusive national advertising representative. The written agreement between WING and Eastman excepts from their contractual arrangement "[n]etwork business which comes to Radio Station WING over the facilities of any established national network." All advertising solicited by Eastman is subject to termination by WING at any time and for any reason.

The corporate and business relationship between WING and Eastman falls far short of the close ties necessary to find that a foreign corporation is constructively present in New York and doing business in the traditional sense through a subsidiary or parent corporation. Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116, 121 (2d Cir. 1967) "a foreign corporation is doing business in New York 'in the traditional sense' when its New York representative provides services beyond 'mere solicitation' and these services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." Compare Frummer v. Hilton Hotels International, Inc., 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967) (London hotel corporation and New York Reservation Service owned in common by third defendant was "doing business"); Public Admin. of the County of New York v. Royal Bank of Canada, 19 N.Y.2d 127, 278 N.Y.S.2d 378, 224 N.E. 2d 877 (1967) (French bank was not merely a subsidiary of defendant New York bank, but one and the same corporation) with Miller v. Surf Properties, Inc., 4 N.Y.2d 475, 480, 176 N.Y.S. 2d 318, 151 N.E.2d 874 (1958) (Florida hotel represented in New York by Resort Service which answers phone and forwards reservations was not "doing business"). There is no basis for a finding that the WING "corporation is here." Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 267, 115 N.E. 915 (1917); Bryant v. Finnish National Airline, 15 N.Y.2d 426, 430, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965) (Airline solicited business through own name and employees).

## PLAINTIFF NOT INJURED IN NEW YORK

Plaintiff's cause of action is predicated on a tortious act outside the state. For the CPLR to apply, it is necessary that the act cause injury within New York. The relevant provision—subparagraph 3 of subdivision (a) of CPLR 302—provides a basis for jurisdiction over any person who:

"3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

In a jurisdictional sense there was no injury within New York.

■ Plaintiff, a New York corporation doing business throughout the United States, alleges that it was injured by an act of unfair competition taking place in Ohio, where it was promoting a demolition derby at the Kil-Kare Speedway. WING, a station with an effective daytime operating radius of approximately fifty miles, used portions of plaintiff's pre-taped announcements for the benefit of El Dora Speedway, which draws its audience from the same area as does the Kil-Kare Speedway. The injury was, therefore, loss of prospective revenue in Ohio.

In determining the situs of an injury resulting from an act of unfair competition for jurisdictional purposes—and here the relevant consideration is fairness of the trial forum—there are three possibilities worth considering: (1) any place where plaintiff does business; (2) the principle place of business of the plaintiff; and (3) the place where plaintiff lost business. For purposes of a jurisdictional statute such as New York's, the first can be rejected almost out of hand; the second has slight merit; and the third seems most apt. Where the plaintiff is a large national corporation, permitting it to sue in any of the fifty states in which it does business would obviously be unfair to the defendant. The main place of business of the plaintiff would have no predictable relationship with the tortious activities of the defendant. The place where the plaintiff lost business would normally be a forum reasonably foreseeable by a tortfeasor and it would usually be the place where the critical events associated with the dispute took place.

■ In determining whether or not a particular situs is a place of injury in the jurisdictional sense, we must be mindful that however "minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite of its exercise of power over him." Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958). The place of lost business obviously meets this test; it is doubtful whether the other two possible choices are "reasonable and fair." International Shoe Co. v. State of Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ Choice of law rules for conflicts purposes offer a weak analogy. The place of injury is only one of the contacts considered in choosing the law to be applied in tort actions. See American Law Institute, Restatement of the Law, Second, Conflict of Laws, § 379(2) (a) (Tentative Draft No. 9, 1964). In unfair competition actions the choice has been made on the basis of "place of the wrong" defined as the place "where the last event necessary to make an actor liable takes place." Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 639 (2d Cir. 1956), cert. denied, 352 U.S. 913, 77 S.Ct. 144, 1 L.Ed.2d 120 (1956). Cf. Shoppers Fair of Arkansas, Inc. v. Sanders Company, 207 F.Supp. 718, 725 (W.D.Ark. 1962) (place where customers deceived). See Restatement, Conflict of Laws, § 377.

A corporation such as plaintiff which does business in more than one state may be compared to a man with his trunk and head in one state and his limbs and fingers spread over many others. If one finger is bruised, the whole body—including each of the fingers—is weakened. Most would agree, however, that injury is localized in one finger. Similarly, a corporation, when beset by unfair competition in one or more states, is weakened wherever it does business, but businessmen would generally agree that their injury was the "loss of business where the customers" are located. Harper & James, The Law of Torts, p. 1703 (1956). Though not decisive for jurisdictional purposes, such laymen's conceptions are helpful in determining what is a reasonable place for trial.

For the reasons stated, WING's motion to dismiss is granted.

So ordered.