**STARK CARPET CORPORATION, Plaintiff,**

v.

**M–GEOUGH ROBINSON, INC., James M-Geough and Ned Robinson, Defendants.***

78 Civ. 4083 (CHT).

United States District Court, S. D. New York.

Jan. 17, 1980.

---

Zimet, Haines, Moss & Friedman, New York City, for plaintiff; Howard I. Rhine, Sharon H. Anson, Gottlieb, Rackman & Reisman, P. C., New York City, of counsel.

McCullough, Stievater & Polvere, Charlestown, Mass., for defendants; Barry A. Wadler, New York City, of counsel.

## OPINION

TENNEY, Senior District Judge.

Plaintiff, Stark Carpet Corporation ("Stark Carpet"), has brought this action to recover damages and to obtain an injunction against a Massachusetts corporation, M–Geough Robinson, Inc. ("MGR"), and two of its officers, James M–Geough and Ned Robinson. Plaintiff sues for trademark infringement, unfair competition, palming off, improper use of trade secrets, breach of fiduciary duty, unjust enrichment and conversion. Each defendant has moved to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue and, alternatively, for a change of venue to the District of Massachusetts. Subject matter jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332, and violation of a federal trademark law, 28 U.S.C. § 1338(a). The Court concludes that it has subject

matter jurisdiction over this action,[1] grants the motion to dismiss the complaint for lack of personal jurisdiction,[2] and grants the motion to transfer venue to the District of Massachusetts.[3]

### Background

MGR is a sales representative for manufacturers of furniture, home furnishings and carpets. From 1967 until 1976, MGR was Stark Carpet's sales representative in the New England area. Stark Carpet alleges that after MGR terminated their business relationship, MGR retained, without Stark Carpet's permission, various sales aids (samples, price lists and brochures) that should have been returned. It alleges that MGR used the Stark trademark and trade name in representing inferior products. It also alleges that defendant obliterated plaintiff's trademark from some samples, indicating that these samples were the products of other manufacturers. Furthermore, plaintiff alleges that MGR acquired valuable trade secrets during their business relationship and improperly used those trade secrets after the relationship ended.

MGR operates a showroom in Boston where it displays the products of several manufacturers and suppliers. MGR's clients are members of the "design trade" (architects and designers) who visit MGR's showroom to view the products of its suppliers. When a client decides to buy a displayed product, MGR prepares an order and submits it to the supplier who approves and completes the transaction with the client. MGR then receives a commission from the supplier. Defendant's Reply Brief at 3–4.

MGR's sales territory includes the six New England states, and for one supplier, the Albany, New York area. About two-thirds of its clients are located in Massachusetts. Deposition of Edward W. Robinson, sworn to February 27, 1979, at 21, 55, 68 ("Feb. Dep."). MGR's suppliers are located in several states. Many are New York firms, and from these suppliers MGR receives approximately two-thirds of its total commissions. Feb. Dep. at 49. The sales that generate these commissions are made primarily in Massachusetts and to New England-based clients.

MGR is not licensed to do business in New York, does not pay New York State taxes, does not maintain a New York office, showroom, postal address or telephone list-

---

1. Contending that the jurisdictional amount of $10,000 has not been met, the defendants moved for a dismissal for lack of subject matter jurisdiction. They did not discuss the motion in their Memorandum. The complaint, which demands over $1,000,000 in damages, governs the amount in controversy and clearly exceeds $10,000. *See Horton v. Liberty Mutual Insurance Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961); *St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Accordingly, the motion is meritless.

2. Stark Carpet does not allege any facts regarding the presence of the individual defendants in New York, nor does it press the jurisdictional issue in the Memorandum as to the individual defendants.

3. "The court 'has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in [the] district, if a transfer would be in the interest of justice.'" *Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978), *quoting Volk Corp. v. Art-Pak Clip Art Service*, 432 F.Supp. 1179, 1181 (S.D.N.Y.1977). The Court does not reach the question whether venue is proper in the Southern District of New York because it has concluded that the defendants are not subject to jurisdiction in New York. Stark Carpet asserts venue on the basis of 28 U.S.C. § 1391(b), which provides for venue in the judicial district where the defendant resides or where the claim arose. The corporation's residence is defined in § 1391(c) as any judicial district where the corporation is doing business. Plaintiff's sole venue argument rests on the doing business standard. While the Court does not reach the venue question, it should be noted that the finding, explained later in the text, that the defendant is not "doing business" in New York for jurisdictional purposes is relevant to the venue motion. The test for "doing business" for venue purposes, 28 U.S.C. § 1391, is the same as the jurisdictional standard, N.Y.C.P.L.R. § 301. *Carter-Wallace, Inc. v. Ever-Dry Corp.*, 290 F.Supp. 735, 737 (S.D.N.Y.1968). All activities within the state are relevant to determine jurisdiction, but only those activities in the Southern District are relevant in determining venue. If MGR's activities in New York State do not constitute "doing business" for jurisdictional purposes, then a fortiori, MGR is not "doing business" in the Southern District.

ing. It has no employees located within New York State. Affidavit of Edward W. Robinson on behalf of M–Geough Robinson, Inc., sworn to October 3, 1978. Its sales territory in the Albany area has about 20 active clients whose purchases generate about 2% ($1,500) of its total commissions. Feb. Dep. at 20, 64–65. MGR visits these clients about four times a year. Feb. Dep. at 62. New York City is not part of MGR's sales territory, and MGR does not solicit orders in New York City. An occasional sale, however, is made to a New York City resident. In 1977–1978, MGR personnel made several visits to New York City (a total of 20 "man days") for business purposes, usually to attend trade shows. Feb. Dep. at 22–23. Occasionally, MGR directs its clients to the New York City showrooms of its suppliers. When a sale results, MGR receives a partial commission. Feb. Dep. at 32–34. MGR has advertised in national magazines that reach New York residents and circulates a newsletter to 71 New York clients (4% of its total mailing list) who are located primarily in the Albany area. Feb. Dep. at 16; Deposition of Edward W. Robinson, sworn to April 13, 1979, at 11 ("Apr. Dep.").

### Discussion

In diversity actions, federal courts look to the law of the forum state to determine whether a defendant is subject to its jurisdiction. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 225, 229–31 (2d Cir. 1963); *Metropolitan Staple Corp. v. Samuel Moore and Co.*, 278 F.Supp. 85, 87 (S.D.N.Y. 1967). Stark Carpet asserts that MGR is subject to jurisdiction in New York under N.Y.C.P.L.R. §§ 301, 302(a)(3)(ii). Section 301 provides jurisdiction over a defendant who is "doing business" in the state sufficient to constitute its presence in New York. A defendant who is "doing business" in New York under section 301 is deemed present within the state and is therefore subject to jurisdiction on any cause of action, regardless of whether the cause of action is related to defendant's New York activities. Section 302(a)(3)(ii) is the provi-

sion in New York's "long-arm" statute that permits New York courts to exercise jurisdiction over an out-of-state defendant who has committed a tort outside the state that has caused foreseeable injury to persons or property within the state. The "long-arm" statute requires that the cause of action arise from the defendant's contact with the state. *Frummer v. Hilton Hotels Int'l*, 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 853 (1967).

### "Doing Business"

Jurisdiction under N.Y.C.P.L.R. § 301 requires that the defendant be "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *Manchester Modes, Inc. v. Lilli Ann Corp.*, 306 F.Supp. 622, 624 (S.D.N.Y. 1969); *Frummer v. Hilton Hotels Int'l, supra*, 19 N.Y.2d at 536, 281 N.Y.S.2d at 43, 227 N.E.2d at 853. The statute requires not merely doing business "occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917). "No precise test exists for determining whether a foreign corporation is 'doing business' within New York State. . . . Each case must depend upon its own facts . . . ." *Manchester Modes, Inc. v. Lilli Ann Corp., supra*, 306 F.Supp. at 624; *see Frummer v. Hilton Hotels Int'l, supra*, 19 N.Y.2d at 537, 281 N.Y.S.2d at 44, 227 N.E.2d at 853; *Bryant v. Finnish Nat'l Airline*, 15 N.Y.2d 426, 432, 260 N.Y.S.2d 625, 629, 208 N.E.2d 439, 441 (1965).

Stark Carpet contends that MGR is doing business in New York. According to Stark, by soliciting orders within New York and purchasing products from New York suppliers, MGR comes within the "solicitation-plus" rule set forth in *Aquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205, 211 (2d Cir. 1970), and *Frummer v. Hilton Hotels Int'l, supra*. " '[M]ere solicitation' of business . . . is not enough to constitute doing business." *Id.*, 19 N.Y.2d at 536, 281 N.Y.S.2d at 43, 227

N.E.2d at 853. "[O]nce solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business.'" *Aquascutum of London, Inc. v. S.S. American Champion, supra*, 426 F.2d at 211. But the "solicitation-plus" rule is not a precise formula to be applied mechanically to a defendant whose solicitation in New York is sporadic and minimal. Rather, courts require "substantial solicitation" that is carried on with a "considerable measure of continuity and from a permanent locale" within the state. *Bryant v. Finnish Nat'l Airline, supra*, 15 N.Y.2d at 429, 431, 260 N.Y.S.2d at 627, 628, 208 N.E.2d 439, 441. For example, the court found the defendant in *Manchester Modes, Inc. v. Lilli Ann Corp., supra*, to be doing business in the state because it had two New York employees soliciting business at its New York showroom, even though it had few additional New York activities. In *Frummer v. Hilton Hotels Int'l, supra*, the defendant, Hilton (U.K.), a British corporation, was represented in New York by the Hilton Reservation Service, which provided "public relations and publicity work" and "help[ed] to generate business." *Frummer v. Hilton Hotels Int'l, supra*, 19 N.Y.2d at 537, 281 N.Y.S.2d at 44, 227 N.E.2d at 853. The Service maintained a New York office, bank account and telephone number, and was run for the benefit of the defendant. The court found the defendant present in New York by virtue of the activities of its New York-based agent.

On the other hand, in *Aquascutum of London, Inc. v. S.S. American Champion, supra*, the defendant, a foreign shipping company, sent officials to New York to solicit business, contracted to export a substantial volume of goods to New York and employed New York firms to provide various services. The services provided by these New York firms were not as extensive or permanent as those of the defendant's agent in *Frummer v. Hilton Hotels Int'l, supra*. The absence of a permanent office or employee in the state and the minimal services provided by the New York agents were dispositive in the court's finding that the defendant was not doing business in the state. In *Aquascutum of London, Inc. v. S.S. American Champion, supra*, the court noted that "where the activities in addition to solicitation have been particularly skimpy," courts consider whether "the defendant was represented in New York by its own employees rather than by an independent contractor." *Id.* at 212.

MGR's solicitation in New York does not rise to the level of "substantial solicitation" needed to trigger the "solicitation-plus" rule. From its sales territory in the Albany area, MGR derives only 2% of its total income, amounting to $1,500. MGR's volume of business and its four visits to that area per year do not amount to a systematic and continuous operation. Moreover, the solicitation is not carried on from a "permanent locale" within the state. The court, in *Meunier v. Stebo, Inc.*, 38 A.D.2d 590, 328 N.Y.S.2d 608 (2d Dep't 1971), held that "[c]ontinuity of action from a permanent locale is essential." *Id.* at 591, 328 N.Y.S.2d at 611. With such minimal solicitation and the absence of a permanent New York locale, the additional factors must be substantial for the Court to conclude that MGR is doing business in New York.

The periodic visits made by MGR personnel to New York City showrooms and trade shows is a significant factor in the "solicitation-plus" calculation. But, as the court noted in *Sterling Television Presentations v. Shintron Co.*, 454 F.Supp. 183 (S.D.N.Y.1978), the defendant's "presence at a trade exposition, and its occasional sales forays into the district, are not sufficient." *Id.* at 190. And although MGR sent 71 advertising brochures into the state, communication by mail weighs lightly when determining jurisdictional contacts. *Honda Associates, Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886, 890 (S.D.N.Y.1974). In *Sanders v. Wiltemp Corp.*, 465 F.Supp. 71 (S.D.N.Y.1979), the court found that the defendant, who had solicited and attracted many New York customers by sending them advertising brochures, was not doing business in New York.

The location of MGR's suppliers in New York does not represent any activity by MGR in New York. MGR apparently could carry on its business relationships with these firms and receive commissions from them without ever having to leave Massachusetts. The relationship between MGR and its New York suppliers is analogous to the relationship between a local retail store and its out-of-state wholesalers. The retailer does not conduct any out-of-state activities merely by virtue of the wholesaler's location. Similarly, MGR's business relationships with its New York suppliers do not constitute any activity by MGR within New York. Out-of-state corporations have been found to be doing business in New York where their New York business is carried on by an agent, *Frummer v. Hilton Hotels Int'l, supra,* but here the New York suppliers do not act as agents for MGR.[4]

Plaintiff emphasizes that these factors must be considered as a whole and not individually. But to aggregate these tidbits of jurisdictional contacts and conclude that they amount to doing business would go beyond the limits set forth by New York courts. In *New England Laminates Co. v. Murphy,* 79 Misc.2d 1025, 362 N.Y.S.2d 730 (Sup.Ct.1974), the foreign defendant derived $400,000 of business per year from its ten New York customers, employed a full-time salesman to solicit orders in New York, shipped products directly to New York customers and circulated brochures in New York. Yet the court found that the defendant was not doing business in New

York. In *Irgang v. Pelton & Crane Co.,* 42 Misc.2d 70, 247 N.Y.S.2d 743 (Sup.Ct.1964), the defendant, a North Carolina corporation, had two salesmen soliciting orders in New York, had two New York telephone numbers, listed its name on two New York building directories, shipped products to New York dealers, dealt directly with New York customers, and sent officers to New York conventions where its products were displayed and orders were taken. Again, the court found that the defendant was not doing business in New York. In these cases the defendants' activities did not constitute the type of "continuous and systematic" activities required for a showing of doing business. MGR's New York activities, taken as a whole, fall far short of the New York activities of the defendants in *New England Laminates Co. v. Murphy, supra,* and *Irgang v. Pelton & Crane Co., supra.*

Plaintiff urges the Court to follow *Carter-Wallace, Inc. v. Ever-Dry Crop.,* 290 F.Supp. 735 (S.D.N.Y.1968), where the defendant was found to be doing business on the basis of relatively few New York activities. There the defendant derived $60,000 in sales over four years from 220 New York customers. Even more important were the regular and substantial activities carried on by two sales representatives in the state. These activities included solicitation, advertising, collection of delinquent accounts, customer relations negotiations and distribution of samples. Although the activities of the defendant in *Carter-Wallace, Inc. v. Ever-Dry Corp., supra,* were less than in other cases where the defendant was found

---

**4.** Stark Carpet alleges that MGR occasionally refers clients to the New York City showrooms of its suppliers and receives a partial commission when a sale results. The plaintiff may be implying, without directly asserting, that this activity by the supplier is on behalf of MGR and makes the supplier a New York agent of MGR. Whether or not this service constitutes an agency-principal relationship in some tangential way, the services of the "agent" would not be sufficient to confer jurisdiction. In *Frummer v. Hilton Hotels Int'l, supra,* the defendant was found doing business in New York on the basis of its agent's New York activities because the agent did "all the business which Hilton (U.K.) could do were it here by its own

officials." *Id.,* 19 N.Y.2d at 537, 281 N.Y.S.2d at 44, 277 N.E.2d at 854. Assuming that MGR's suppliers could be regarded as MGR's agents, their activities "on behalf" of MGR do not constitute "all the business" which MGR's officials could do if they were present in New York. In fact, these services constitute very little activity for MGR, and MGR does not receive the full benefit of its "agent's" activities because the commissions must be shared. In *Frummer v. Hilton Hotels Int'l, id.* at 538, 281 N.Y.S.2d at 45, 277 N.E.2d at 854, the defendant and its agent were owned by the same corporation, and the agent was a non-profit service run for the defendant's benefit.

to be doing business in New York, its New York activities were considerably greater than MGR's.

*"Long-arm" Statute*

■ The question remains whether this Court can assert jurisdiction on the basis of New York's "long-arm" statute.[5] N.Y.C.P. L.R. § 302(a)(3)(ii) provides jurisdiction over a non-resident defendant who

> commits a tortious act without the state causing injury to person or property within the state . . . if he
>
> . . . . .
>
> expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.[6]

This section establishes a four step test. Jurisdiction can be asserted over MGR pursuant to this section if (1) MGR committed a "tortious act" outside New York, (2) causing injury to plaintiff within New York, (3) it "expects or should reasonably expect" the tortious act to have consequences in New York, and (4) MGR "derives substantial revenue from interstate . . commerce." *Id.*; *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 432 (2d Cir. 1971).

Stark Carpet has alleged numerous tortious acts committed by MGR (including trademark infringement, unfair competition, palming off, improper use of trade secrets, breach of fiduciary duty and conversion) and has described the specific acts giving rise to these torts. These allegations meet the first requirement, that defendant commit a tortious act outside New York.

Stark Carpet has not, however, alleged facts sufficient to support the second requirement, that defendant's acts have caused injury to plaintiff within New York. The complaint contains only the bald con-

clusory statement that defendant had committed wrongful acts "causing injury to plaintiff within this district." While the complaint describes Stark Carpet's injuries allegedly caused by MGR's tortious acts, it does not describe the location of these injuries. Plaintiff states only that MGR's torts "caused foreseeable injury within the state sufficient to establish jurisdiction over all defendants . . . ." Memorandum at 12. Furthermore, plaintiff's subsequent letter to the Court adds only that "defendants do not contest that plaintiff's main place of business is New York." Letter of Howard I. Rhine, dated May 23, 1979, at 2.

■ These assertions do not lead to the conclusion that Stark Carpet was injured in New York. The location of the plaintiff, in itself, is not necessarily the location of the injury.

Of course, there is no question that plaintiffs suffered some harm in New York in the sense that any sale lost anywhere in the United States affects their profits. But that sort of derivative commercial injury in the state is only the result of plaintiffs' domicile here. In *Friedr. Zoellner (New York) Corp. v. Tex Metals Co.*, 396 F.2d 300, 303 (2d Cir. 1968), we stated:

> . . . Section 302(a)(3) is not satisfied by remote or consequential injuries which occur in New York only because the plaintiff is domiciled, incorporated or doing business in the state.

*American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., supra,* 439 F.2d at 433.

In *Black v. Oberle Rentals, Inc.,* 55 Misc.2d 398, 285 N.Y.S.2d 226 (Sup.Ct.1967), one of the first New York cases to interpret section 302(a)(3), a plaintiff sued for personal injuries arising from a collision that occurred in Massachusetts. Defendant tried

---

**5.** Plaintiff, assuming that jurisdiction under the "long-arm" statute is a fait accompli, devotes but a few sentences to this question and offers scant evidence in support of its assertion.

**6.** This section of the long-arm statute has been applied most often in products liability cases— so that a manufacturer that ships products

across state lines should expect to answer for its tort in an out-of-state court. *Gillmore v. J.S. Inskip, Inc.,* 54 Misc.2d 218, 282 N.Y.S.2d 127 (Sup.Ct.1967). But the statute also applies to commercial torts. *Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978).

to implead an Indiana-based manufacturer as a third party defendant. The court found that the tortious acts committed outside the state did not cause injury within the state within the meaning of section 302(a)(3). In denying jurisdiction, the court wrote:

> Conceptually it is difficult for this Court to hold that a personal or property injury in another state by virtue of a tortious act committed in that state can be said to have [caused plaintiff] some injury within the State of New York simply because [plaintiff] is domiciled here. In other words, Section 302(a)(3) CPLR looks to the imparting of the original injury within the State of New York and not resultant damage, in order that jurisdiction might be effectuated. To hold otherwise would open a veritable Pandora's Box of litigation subjecting every conceivable prospective defendant involved in an accident with a New York domiciliary to defend actions brought against them in the State of New York. This is hardly the minimal contact with the State prerequisite to the exercise of its power over a prospective defendant.

*Id.* at 400, 285 N.Y.S.2d at 229 (citation omitted).

*Black v. Oberle Rentals, Inc., supra,* has been cited favorably in many recent cases, *see, e. g., Sanders v. Wiltemp Corp., supra,* 465 F.Supp. at 73; *Kramer v. Hotel Los Monteros S.A.,* 57 A.D.2d 756, 757, 394 N.Y. S.2d 415, 416 (1st Dep't 1977), and its reasoning also applies in cases where the injury is commercial rather than physical. For example, in *Security Nat'l Bank v. Ubex Corp.,* 404 F.Supp. 471 (S.D.N.Y.1975), a third party plaintiff sued a third party defendant for converting a promissory note. The court found that the injuries occurred in Texas where the notes were converted and not in New York—the third party plaintiff's residence—where the consequential injury occurred.

The defendant in *Spectacular Promotions, Inc. v. Radio Station WING,* 272 F.Supp. 734 (E.D.N.Y.1967), had broadcast plaintiff's pretaped radio commercial to advertise another Ohio speedway. The plaintiff argued that the commercial was its "own literary creation and property" and alleged that defendant " 'wrongfully and willfully altered and printed plaintiff's tape.' " *Id.* at 735. Because the tape was broadcast solely in Ohio, where it would draw only local customers away from the plaintiff, the court found that the injury ("loss of prospective revenue") was also in Ohio. Again, the plaintiff's domicile, New York, did not determine the place of the injury.

In *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., supra,* the plaintiff, a New York corporation, contended that it was harmed in New York as a result of defendant's unfair competition. Plaintiff alleged that defendant induced plaintiff's experienced employees to leave plaintiff and go to work for the defendant. Plaintiff's alleged injury stemmed from defendant's solicitation of plaintiff's customers in Kentucky and Pennsylvania. The court found that the situs of plaintiff's injury was where the plaintiff lost business. Even though the plaintiff's principal place of business was New York, the long-arm statute did not reach this defendant because the plaintiff was injured outside New York.

The situs of the plaintiff's injury may coincide with the plaintiff's residence, but such a result is due to special circumstances and not solely to the plaintiff's residence. In *Fantis Foods, Inc. v. Standard Importing Co.,* 63 A.D.2d 52, 406 N.Y.S.2d 763 (1st Dep't 1978), plaintiff and defendant were New York corporations and competitors in the cheese industry. The third party defendant was a foreign corporation which had agreed to sell the same quantity of cheese to both the plaintiff and the defendant. The defendant alleged that the third party defendant had converted the cheese. The court found that the injury occurred in New York because the third party defendant was the sole supplier and had the power to control competition between the plaintiff and defendant. Thus, the tortious injuries "were occasioned not by the mere fact that

[defendant] had its principal office here, but by numerous additional facts." *Id.* at 56, 406 N.Y.S.2d at 766.

In *Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978), the New York Court of Appeals upheld jurisdiction over a foreign corporation whose out-of-state torts caused injury to plaintiff, a New York corporation. The plaintiff sought to enjoin its competitor from hiring a former employee and to enjoin the former employee from disclosing trade secrets. The court found that the defendant corporation had solicited business from plaintiff's major New York customers. The critical factor revealing a New York injury was the "threatened loss of important New York customers," and not merely the plaintiff's New York domicile. *Id.* at 205, 413 N.Y.S.2d at 131, 385 N.E.2d at 1059.

Here, plaintiff does not present any critical facts, such as the unique monopoly position held by the defendant in *Fantis Foods, Inc. v. Standard Importing Co., supra,* or a threatened loss of New York customers as in *Sybron Corp. v. Wetzel, supra,* that would establish a New York injury. Plaintiff's assertion that it was injured in New York rests only on the basis of its domicile in New York. The cases discussed above make it abundantly clear that residence alone does not locate the injury in New York.

■■■ The burden is on the plaintiff to allege the facts that would show its New York injury. *See Security Nat'l Bank v. Ubex Corp., supra,* 404 F.Supp. at 475 n.9.[7] The plaintiff engaged in discovery, submitted a memorandum and a reply letter to the Court, and had ample opportunity to bring forth the necessary jurisdictional facts. The plaintiff has not met the burden of establishing threshold jurisdiction.

7. "The burden of establishing jurisdiction rests upon the party asserting it . . . . Thus in order to obtain long-arm jurisdiction under CPLR § 302 plaintiff must establish 'at least threshold jurisdiction.'" *Security Nat'l Bank v. Ubex Corp., supra,* 404 F.Supp. at 475 n.9, citing *United States v. Montreal Trust Company,* 358 F.2d 239, 242 (2d Cir.), *cert. denied,* 384

In the absence of a New York injury, the Court need not determine whether the injury was foreseeable or whether MGR derived substantial revenue from interstate or international commerce. "It is true that the foreseeability requirement . . . cuts down the scope of the statute, but we do not reach it unless we first conclude that there was injury [with]in New York." *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., supra,* 439 F.2d at 434.

*Venue*

■■■ The defendants have moved, pursuant to 28 U.S.C. § 1404, for a change of venue to the United States District Court for the District of Massachusetts. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This lawsuit could have been brought in the District of Massachusetts because all the defendants reside there. 28 U.S.C. § 1391(b) & (c); *see* note 3 *supra.* The defendants contend that such a transfer is warranted because Stark Carpet's claims are located in Massachusetts, arose out of business transactions that occurred there, and will be decided in accordance with Massachusetts law.[8] The Court agrees that, "in the interest of justice," the action should be transferred to the District of Massachusetts.

■■■ The Court has the power to transfer this suit to another district where it might have been brought even though it does not have personal jurisdiction over the defendants. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77 (2d Cir. 1978). The Second Circuit has adopted the view that 28 U.S.C.

U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966); *Peterson v. Spartan Industries, Inc.,* 33 N.Y.2d 463, 467, 354 N.Y.S.2d 905, 908, 310 N.E.2d 513, 515 (1974).

8. The Court expresses no view on the choice of law question.

§ 1404(a) and 28 U.S.C. § 1406(a)[9] authorize a transfer "in the interest of justice" whether or not venue is proper in the district of the transferor court. *Id.* at 80; *Volk Corp. v. Art-Pak Clip Art Service,* 432 F.Supp. 1179, 1181 & n.5 (S.D.N.Y.1977); *EMI Film Distributors, Ltd. v. L.D.S. Film Co.,* 404 F.Supp. 204, 206 (S.D.N.Y.1975). While defendants' motions to dismiss rely on section 1404(a), section 1406(a) allows the Court to transfer the case sua sponte once a proper objection to venue is made. *Concession Consultants, Inc. v. Mirisch,* 355 F.2d 369, 271–72 n.3 (2d Cir. 1966).[10]

Upon considering "the convenience of parties and witnesses," 28 U.S.C. § 1404(a), "the relative ease of access to sources of proof," *EMI Film Distributors, Ltd. v. L.D.S. Film Co., supra,* 404 F.Supp. at 206, and "potential timeliness problems" with respect to some of the plaintiff's claims, *Lamar v. American Basketball Association,* 468 F.Supp. 1198, 1206 (S.D.N.Y.1979); *see Corke v. Sameiet M.S. Song of Norway, supra,* 572 F.2d at 80, the Court concludes that this action should be transferred to the District of Massachusetts.

### Conclusion

For the foregoing reasons, the defendants' motions to dismiss for lack of personal jurisdiction and to transfer venue to the District of Massachusetts are granted.

So ordered.

---

**9.** 28 U.S.C. § 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

**10.** As noted above, *see* n.3, it is unnecessary for the Court to decide whether venue would be proper in the Southern District of New York.