**Luise M. ROSS, as Administratrix of the Goods, Chattels and Credits of Sonya C. Ross, Deceased, Plaintiff,**

**v.**

**COLORADO OUTWARD BOUND SCHOOL, INC., Defendant.**

**No. CIV–78–273E.**

United States District Court,
W.D. New York.

Feb. 21, 1985.

---

Kevin J. Sullivan, Buffalo, N.Y., for plaintiff.

Thomas Segalla, Timothy M. O'Mara, Buffalo, N.Y., for defendants.

### MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiff has alleged that the death of her daughter Sonya July 22, 1977 while participating in a mountain climbing exercise sponsored by defendant was due to its negligence. The matter is properly before the Court pursuant to diversity jurisdiction. Presently pending are defendant's motions to set aside service of process pursuant to Fed.R.Civ.P. rule 12(b)(5), to dismiss for lack of personal jurisdiction pursuant to rule 12(b)(2) or, alternatively, to transfer the case to the United States District Court

for the District of Colorado pursuant to 28 U.S.C. § 1404(a).

■ Service of process in this matter was made by hand delivery to one Hugh Downey by Carl Pinson, a Denver Deputy Sheriff, April 24, 1978. New York's Civil Practice Law and Rules ("CPLR") § 311 provides in relevant part:

> "Personal service upon a corporation * * * shall be made by delivering the summons as follows:
>
> 1. upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service * * *."

Defendant argues that Downey, who was listed in the 1978 tax return of Colorado Outward Bound School, Inc. ("COBS") as "administrator" (*see* Exhibit A to May 11, 1984 affidavit of Kevin J. Sullivan, Esq.), did not have appropriate authority to receive service. This argument is technical in nature and it is clear from the facts, including the lack of any indication that Downey attempted to refuse service, that

> "[o]bjectively viewed, in the light of the circumstances, the service made was calculated to give the corporation fair notice and, in fact, resulted in immediate redelivery of the summonses to a proper person." *De Vore v. Osborne*, 78 A.D.2d 915, 432 N.Y.S.2d 919, 921 (3d Dep't 1980).

Accordingly, service must be sustained.

■ The question of personal jurisdiction in this case is also governed by New York law. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2d Cir.1981); *Arrowsmith v. U.P.I.*, 320 F.2d 219 (2d Cir.1963) (*en banc*). The facts of the case preclude resort to the "long-arm statute" embodied in CPLR § 302 to obtain jurisdic-

tion over "COBS", a Colorado corporation. Directly on point is *Diskin v. Starck*, 538 F.Supp. 877 (E.D.N.Y.1982), in which plaintiffs—two citizens of New York—complained of tortious injury to their children while said children had been enrolled in a summer camp in Vermont. The court held that personal jurisdiction in New York could not be obtained over the Vermont defendants under CPLR § 302(a)(3) [1]:

> "Although this section requires the occurrence of tortious conduct outside the state, its essential predicate is that the injury giving rise to the plaintiffs' claim occur within the state. *See Kramer v. Hotel Los Monteros, S.A.*, 57 A.D.2d 756, 757, 394 N.Y.S.2d 415, 416 (1st Dep't 1977); *Black v. Oberle Rentals, Inc.*, 55 Misc.2d 398, 400, 285 N.Y.S.2d 226, 228–29 (Sup.Ct. Onondaga Co.1967); see also *Spectacular Promotions, Inc. v. Radio Station WING*, 272 F.Supp. 734, 736–37 (E.D.N.Y.1967)." *Id.* at 879.

Similar facts are presented by the case at bar in which both the alleged tortious conduct and the death of Sonya Ross occurred in Colorado. As in *Diskin v. Starck, supra*

> "[P]laintiffs cannot sustain jurisdiction under § 302(a)(3) merely by showing that as domiciliaries of this state, they suffered further damage (either economic or physical), on account of the earlier injuries sustained outside the state. See *Kramer v. Hotel Los Monteros, supra*, 57 A.D.2d at 757, 394 N.Y.S.2d at 416; *Black v. Oberle Rentals, supra*, 55 Misc.2d at 400, 285 N.Y.S.2d at 228–29." *Ibid.*

Nor does CPLR § 302(a)(1)'s conferral of jurisdiction over a non-domiciliary who "transacts business within the state or contracts anywhere to provide goods and ser-

---

**1.** Personal jurisdiction may be obtained over "any nondomiciliary, or his executor or administrator, who in person or through an agent: * * * commits a tortious act without the state causing injury to person or property within the state * * * if he

(i) regularly does or solicits business, or engages in any other persistent course of con-

duct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce * * *"

vices in the state" avail plaintiff in this case. Again, as was stated in *Diskin v. Starck, supra,*

> "The courts in New York consistently have held that injuries sustained while participating outside the state in recreational activities advertised and contracted for within the state, bear too remote a relationship to the advertising and contractual activity claimed to be the transaction of business in the state to warrant a conclusion that the injuries arose from the in-state activity. See *Noble v. Singapore Resort Motel of Miami Beach,* 21 N.Y.2d 1006, 1008, 290 N.Y.S.2d 926, 927, 238 N.E.2d 328, 329 (1968) (per curiam); *Meunier v. Stebo, Inc.,* 38 A.D.2d 590, 591, 328 N.Y.S.2d 608, 611 (2d Dep't 1971); see also *Gelfand v. Tanner Motor Tours, Ltd.,* 339 F.2d 317, 321–22 (2d Cir.1964)." *Id.* at 880.

The remaining provisions of section 302 by their terms are clearly inapplicable.

 Faced with an inability to obtain in personam jurisdiction over defendant through CPLR § 302, plaintiff attempts to assert a jurisdictional nexus under the more traditional "doing business" test of CPLR § 301, by relying on an alleged link between COBS and its purported "parent" Outward Bound, Inc. ("OBI"), a Delaware corporation with allegedly closer ties to New York than those of defendant.[2]

> "Under CPLR 301[3] 'the authority of the New York courts [to exercise jurisdiction over a foreign corporation] is based solely upon the fact that the defendant is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction"' * * * The test, though not 'precise' * * * is a 'simple pragmatic one' * * *: is the aggre-

gate of the corporation's activities in the State such that it may be said to be 'present' in the State 'not occasionally or casually, but with a fair measure of permanence and continuity' * * * and is the quality and nature of the corporation's contacts with the State sufficient to make it reasonable and just according to ' "traditional notions of fair play and substantial justice" ' that it be required to defend the action here * * *." *Laufer v. Ostrow,* 55 N.Y.2d 305, 309–310, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692, 694 (1982).

The "doing business" standard of CPLR § 301 requires a considerably greater showing of contacts with New York than the "transacts business" standard under section 302(a)(1). *See Bialek v. Racal-Milgo, Inc.,* 545 F.Supp. 25, 34 (S.D.N.Y.1982). The anomalous possibilities of permitting a plaintiff to obtain jurisdiction under the more stringent requirements of section 301 when the same defendant could not be reached via section 302(a)(1), merely by incanting some linkage between the defendant corporation and a corporation "doing business" in the proposed forum state, are readily apparent.

> "A plaintiff seeking to base jurisdiction over a parent corporation on the activities of its subsidiary[4] must show not only that the subsidiary 'does business' in New York, but also show either (1) that the subsidiary does all the business that its parent could do were it in New York by its own officials, making the subsidiary really an 'agent' of the parent, *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 44, 227 N.E.2d 851, 854, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266

---

**2.** While such argument has more often been used to reach a parent through its subsidiary, it has been held that under New York law the same standards by which a parent corporation is sought to be subjected to in personam jurisdiction based on acts of a subsidiary are to be applied where a subsidiary is sought to be reached through the presence of a parent. *DCA Food Industries Inc. v. Hawthorn Mellody, Inc.,* 470 F.Supp. 574 (S.D.N.Y.1979).

**3.** The statute provides:

> "A court may exercise such jurisdiction over persons, property, or states as might have been exercised heretofore."

**4.** Or the converse in the present case. *See* fn. 2, *supra.*

(1967), or (2) day-to-day control of the subsidiary by the parent that is so complete as to render the subsidiary, in fact, merely a 'department' of the parent. *Delagi v. Volkswagenwerk AG,* * * * 29 N.Y.2d [426,] * * * 432, 328 N.Y.S.2d [653,] 657, 278 N.E.2d [895,] * * * 897." *Bialek v. Racal-Milgo, Inc., supra* at 32.

It is clear that OBI is not connected to COBS in a sense sufficient to establish jurisdiction under section 301. Assuming, arguendo, that jurisdiction could be obtained over OBI and that plaintiff's relevant averments are accurate, plaintiff has merely shown that OBI has a nationwide promotional function for its six Outward Bound schools, of which defendant is one. For example, plaintiff has included as Exhibit D to the said affidavit of Sullivan, a purported attachment to the 1978 OBI tax form which states:

"Outward Bound Inc has been organized for the purpose of acting as a central parent organization for the establishment, maintenance, operations, control and support of all Outward Bound Schools.

* * * * * *

"Administrative fees [are] paid to Outward Bound Inc. by the various Outward Bound Schools for administrative and fund raising purposes. These fees and services facilitate the performance of Outward Bound Inc.'s charitable and educational activities."

Plaintiff has also submitted, as Exhibit G to said affidavit, an apparent charter agreement between COBS and OBI wherein OBI grants COBS the right to operate a school to "promote the concept of OUTWARD BOUND", but retains certain rights of approval over various COBS decisions. Consistent with the implication of these documents, plaintiff has alleged some minor degree of confluence of directors and organizational personnel between COBS and OBI, some monetary benefit accruing to COBS through the efforts of OBI, some attendance by COBS administrators at OBI annual meetings in New York, and various other manifestations of the relationship between the two corporations. But the mere existence of a garden-variety parent-subsidiary or franchisor-franchisee relationship, even if plaintiff has established such, is not sufficient to establish jurisdiction under the test outlined in *Bialek v. Racal-Milgo, Inc., supra.* One could not argue, for example, that a New York resident who was injured while spending a vacation in a Hilton hotel in Colorado could subsequently sue in tort in New York based solely on the fact that there is a national Hilton organization which presumably is doing business in New York. What is contemplated in order to justify this boot-strap jurisdiction under section 301 is more in the nature of either an alter-ego or piercing the corporate veil theory, involving some equitable grounds for treating the two corporations as one for jurisdictional purposes, or a particularly substantial coincidence of identity between the two bodies—the point being that the same factors that would justify a finding of jurisdiction as to one would similarly attach to the other. Plaintiff has not made such a showing.

■ That this Court does not have personal jurisdiction over defendant, however, does not disempower it to transfer this action to a cognizant federal court pursuant to 28 U.S.C. § 1406(a). *Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77 (2d Cir.1978). The District of Colorado, wherein plaintiff's causes of action assertedly arose, would have been a proper district for the original institution of this action under 28 U.S.C. § 1391(b) and the fact that venue was also proper in this forum poses no bar to a transfer under section 1406(a). *Id.* at 79–80.[5]

5. It is worth noting that this Court would have granted defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) in any event. COBS, which had the burden as moving party to show that such a transfer should be made, *see Factors, etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979), has submitted affidavits specifying the names and substance of the proposed testimony of certain key witnesses, most of whom reside in Colorado, as is required when a transfer is sought on account of the

Accordingly, inasmuch as this Court lacks personal jurisdiction over defendant and, consistent with the discussion herein, the case is hereby ORDERED transferred to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1406(a).

convenience of witnesses. *Ibid.* This Court recognizes that the cost of bringing willing witnesses to this district from Colorado to testify, as well as the detriment to defendant's case in having to rely alternatively on the deposition testimony of Colorado witnesses who might not voluntarily appear at a New York trial, are important considerations which weigh in favor of transfer. *See Vassallo v. Niedermeyer*, 495 F.Supp. 757, 760 (S.D.N.Y.1980). Of course such considerations can cut both ways. Moreover, this Court must consider the fact of plaintiff's residence and plaintiff's decedent's former residence in New York, as well as plaintiff's assertion that many of plaintiff's witnesses reside either in New York or in the eastern part of the country. (Supplemental Affidavit of Luise M. Ross of September 18, 1984.) Unfortunately plaintiff has not made clear what the substance

of the testimony of many of the witnesses would be. It appears, however, that said witnesses include, on the one hand, co-participants with decedent in the 1977 COBS program and, on the other, various persons who had contact with decedent in New York. The thrust of the testimony of the latter witnesses appears primarily concerned with the damages aspect of plaintiff's case so that plaintiff could request a bifurcated trial from the transferee court and thereby avoid any expense in transporting and lodging the damages witnesses unless and until a liability verdict had been returned in plaintiff's favor. Plaintiff's claim remains one that arises almost entirely from events occurring in Colorado and the Court is convinced that Colorado is the appropriate jurisdiction for further proceedings in this matter.