**AMERICAN EDELSTAAL, INC., and Ralph Heineman, Plaintiffs,**

v.

**Karl MAIER, Maier & Co., Fabrik Fur Spezialmashinen, Emco, Harald Lux, Emil Lux, GmbH and Emco-Lux Corporation, Defendants.**

**No. 76 Civ. 4090.**

United States District Court, S. D. New York.

Nov. 13, 1978.

---

Michael Schlesinger, Hagendorf & Schlesinger, New York City, for plaintiffs.

Henry O. Leichter, Erda & Leichter, New York City, for Maier defendants.

Martin C. Seham, Roger H. Briton, Surrey, Karasik, Morse & Seham, New York City, for Lux defendants.

## OPINION

GRIESA, District Judge.

This is an action against an Austrian company and other defendants, involving a contract granting an American company exclusive rights to sell certain machinery in the United States. All defendants are domiciled outside the State of New York. Jurisdiction over them is claimed under the New York "long arm" statute.

Plaintiffs are American Edelstaal, Inc. ("Edelstaal") and Ralph A. Heineman, the principal of Edelstaal. Edelstaal is a New York corporation, having its principal place of business in New Jersey. Heineman is a resident of New Jersey.

Defendant Maier & Co. is a sole proprietorship organized under the laws of Austria having its principal place of business in Austria. Defendant EMCO is not a separate entity, but appears to be simply a trade name which Maier & Co. uses. Defendant Karl Maier is the owner of Maier & Co., and is a citizen of Austria. I will occasionally refer hereafter to these three defendants as "the Maier defendants."

Defendant Emil Lux GmbH is a company located in West Germany. Defendant Emco-Lux Corporation is a Delaware corporation, having its principal place of business in Ohio. Emco-Lux Corporation is a wholly-owned subsidiary of Emil Lux GmbH. Defendant Harald Lux is a resident of Massachusetts or Ohio. Harald Lux is a member of the Board of Directors of Emil Lux GmbH, and is the president and chief operating officer of Emco-Lux. I will occasionally refer hereafter to defendants Emil Lux GmbH, Emco-Lux Corporation, and Harald Lux as "the Lux defendants."

All defendants have moved to dismiss the action for lack of personal jurisdiction. In addition, the Maier defendants have moved to dismiss for lack of subject matter jurisdiction. The Maier defendants have moved to dismiss the action for failure to state a claim upon which relief can be granted, which must be treated as a motion for summary judgment because of reliance on matters outside the pleadings. All defendants have moved for certain protective orders regarding discovery.

The motions to dismiss for lack of personal jurisdiction are granted as to the Maier defendants, and denied as to the Lux defendants at the present time, subject to renewal after discovery and further briefing. I do not reach the motions of the Maier defendants to dismiss for lack of subject matter jurisdiction and for summary judgment. Limited discovery will be permitted against the Lux defendants, as specified later in this opinion.

### I.

The Maier defendants have never maintained any office or other facility in New York. They have no resident agent here, nor do they regularly send any representative to New York to solicit business or for any other purpose. The same is true regarding the Lux defendants.

Plaintiffs attempt to assert jurisdiction over the defendants on the basis of the New York long-arm statute, C.P.L.R. § 302(a), which provides:

> "(a) *Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from the interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state."

■ Plaintiffs have the burden of demonstrating a sufficient factual basis to sustain jurisdiction under the long-arm statute. *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975).

Plaintiffs claim that a jurisdictional basis exists over defendants under each of the first three provisions in C.P.L.R. § 302(a)—that is, that the causes of action arise from defendants' transaction of business in New York, or from tortious acts committed by defendants in New York, or from tortious acts committed by defendants outside New York causing injury to persons or property within the state.

## II.

In 1961 a contract was entered into between Maier & Co. and Edelstaal, under which Edelstaal was given the exclusive right to sell two of Maier & Co.'s machines in the United States. The machines are known as the Unimat and Maximat. Edelstaal was to purchase the machines from Maier f. o. b. Hamburg. Edelstaal was required to promote the machines in the United States, and was obliged to buy certain minimum quantities each year from Maier & Co. The contract was negotiated in Holland by Heineman and Karl Maier. According to plaintiffs, Karl Maier signed the contract in Austria and Heineman signed it in the United States, both having received the contract by mail. According to the Maier defendants, the contract was signed by both parties in Holland. Regardless of which version is accepted, it is clear that the Maier defendants did not come to the United States for either the negotiations or the signing of the 1961 contract.

From 1961 to 1976 Maier & Co. sold substantial quantities of the machines to Edelstaal pursuant to the contract, and Edelstaal resold the machines in the United States. Edelstaal would send orders from the United States to Austria and Maier & Co. would fill these orders in Austria and have the goods shipped f. o. b. Hamburg. There were occasional trips by Edelstaal representatives to Austria, and a few visits by Maier & Co. representatives to the United States.

In connection with the latter point, the affidavit of Karl Maier states that almost all the face-to-face discussions between the parties during the course of their business dealings occurred in Europe, and that Edelstaal representatives made at least 15 trips to Austria to Maier & Co.'s headquarters. Plaintiffs do not deny that there were these 15 trips, and concede that the Edelstaal representatives traveled to Austria for business discussions because of Maier & Co.'s reluctance to travel to the United States. However, there were occasions when representatives of Maier & Co. did come to the United States.

Both plaintiffs and the Maier defendants agree that Karl Maier visited New York and had business discussions with Heineman in 1963 and 1964. There were routine discussions about sales goals under the contract and other matters relating to the contract. In addition, Karl Maier had discussions with Heineman about the possibility of Edelstaal taking on another machine. There was a demonstration of this machine to a trade magazine editor.

The 1961 contract, by its terms, was to expire September 15, 1965, subject to Edelstaal's option to extend the contract to September 15, 1970 if Edelstaal gave notice in writing six months before the 1965 expiration date. Plaintiffs contend that there was a conversation between Heineman and Karl Maier in which the extension was agreed upon. Plaintiffs do not contend that this discussion was in New York; and it must be assumed that if this discussion took place, it was in Austria. Plaintiffs claim that an extension notice was sent on March 30, 1965. This was less than six months before the September 1, 1965 expiration date. Plaintiffs contend in effect that Karl Maier had orally waived the six-month requirement. Maier & Co. contends that it never received the extension notice. However, the parties continued to do business after 1965.

On May 20, 1966 Karl Maier and Heineman signed an agreement on behalf of their respective companies at the Maier & Co. headquarters in Austria. This document is entitled "Financing of Supplies from Maier to American Edelstaal, Inc." This agreement provided for the extension of credit by Maier & Co. to Edelstaal under certain terms, and provided that Heineman would give Karl Maier a 10% interest in Edelstaal as of May 20, 1966. The last paragraph of the agreement provided:

"Maier & Co. agrees to prolong existing contract for additional 10 years with an option to renew for an additional 10 years."

There was another visit by Karl Maier to New York in 1968. Routine matters under the contract were discussed.

In 1969 Edelstaal moved its office from New York to New Jersey.

In the fall of 1974 Karl Maier was in New York. He admits discussing business with Edelstaal, but indicates that such discussion was held in New Jersey. Plaintiffs contend that there were meetings both in New York City and in Tenafly, New Jersey. In any event, regardless of where the meetings were held, they dealt with routine matters under the contract. In addition, it appears that a major reason why Karl Maier came to the United States in 1974 was in connection with the birth of a grandchild in New York City.

It appears that one or more representatives of Maier & Co. in addition to Karl Maier may have come to the United States on two or three occasions. However, there is no indication that their discussions with Edelstaal involved matters of substance.

In June 1976 Heineman met with Karl Maier in Austria. At this time Karl Maier informed Heineman that the business relations between Maier & Co. and Edelstaal were terminated. Plaintiffs contend that the action taken at this meeting constituted a breach of contract. The Maier defendants contend that the contractual relationship between the parties had lawfully terminated prior to the June 1976 meeting.

Advertising for Maier & Co. or EMCO products appeared in trade journals distributed in New York. Also brochures and other promotional materials relating to Maier & Co. or EMCO products were distributed in New York and elsewhere in the United States. However, it appears that the advertisements in the trade journals were placed by Edelstaal, and that Edelstaal purchased brochures and other advertising materials from Maier & Co. f. o. b. Hamburg.

An affidavit of Heineman states that Karl Maier is a member of an organization called the U.S.—Austrian Chamber of Commerce, and that Karl Maier was invited to participate in a trade show in New York. Plaintiffs do not make clear the connection between the U.S.—Austrian Chamber of Commerce and the trade show, or whether Karl Maier did in fact participate in the trade show.

In May 1976 Maier & Co. commenced discussions with Emil Lux GmbH about the possibility of Lux replacing Edelstaal in distributing Maier & Co. products in the United States. Lux was a West German company and had served as an exclusive distributor for Maier products in that country for about 20 years. Maier & Co. dis-

cussed with Lux the possibility of adding the American market to Lux's operations. A member of the Lux family, Harald Lux, resided in Massachusetts. Harald Lux made certain investigations in the United States about the possibility of operations in this country. He visited several states. However, Harald Lux denies that any of these visits included New York.

Emil Lux GmbH decided to form a United States subsidiary, Emco-Lux Corporation, which was incorporated in Delaware in February 1977, and which has its principal place of business in Columbus, Ohio.

On February 21, 1977 Harald Lux wrote letters to several United States companies about the Unimat and Maximat machines. The letters were addressed to "Dear Customer" and noted that the customer may have experienced problems recently in the procurement of Unimat and Maximat machines. The letter stated that "the Lux company," which was an international marketing company located in West Germany, would soon be in a position to be of service to customers for Unimat and Maximat in the United States through a wholly-owned subsidiary, Emco-Lux Corporation, located in Columbus, Ohio. The letter stated that Emco-Lux would start operating in Columbus June 11, 1977, but invited any inquiries to be made in the meantime to Harald Lux in Newtonville, Massachusetts.

Seventeen of the recipients of the February 1977 letters were located in New York. Emco-Lux received inquiries from three of the seventeen recipients, and engaged in correspondence with these three. Only one of the New York recipients of the letter made a purchase from Emco-Lux and that was for $314. The item was shipped f. o. b. Columbus, Ohio. As of November 1977, when the last Harald Lux affidavit was submitted, Emco-Lux had made sales to six other customers in the United States, totaling $3,200. Whether some of those sales were made in New York is not clear. In any event, they were all made f. o. b. Columbus, Ohio.

Plaintiffs have submitted three letters which Edelstaal received from its customers following the Harald Lux letter of February 21, 1977. These letters acknowledged receipt of the Harald Lux letter and expressed concern about the proposed entry of the Lux entity into the United States market. Only one of these letters was sent by an Edelstaal customer in New York.

## III.

The first question is whether the causes of action against the Maier defendants arose out of the transaction of business within New York State by these defendants, or any of them. The Maier defendants did not negotiate or sign the 1961 contract in New York. There is no contention or evidence that the Maier defendants negotiated any amendment or extension of the 1961 contract in New York. The May 20, 1966 agreement was negotiated and signed in Austria.

The notification by Maier & Co. to Edelstaal that the relationship was terminated was delivered at a meeting in Austria in 1976.

Thus, as far as negotiations and meetings between the parties are concerned, all the crucial ones took place in Europe. The few meetings that occurred in the United States were routine and incidental.

The machines which were the subject of the dealings were manufactured by Maier & Co. in Austria. They were sold to Edelstaal, and shipped f. o. b. Hamburg, Germany.

There is no evidence that the Maier defendants placed advertisements for their products in New York or circulated promotional materials. The evidence indicates that advertising and the circulation of promotional materials in New York were arranged for by Edelstaal.

■ I hold that neither the Maier defendants, nor any of them, transacted business in New York State within the meaning of C.P.L.R. § 302(a)(1) and the relevant authorities. If it were not for the fact that Karl Maier and certain of his associates visited New York on a few occasions, there would be little or nothing upon which plain-

tiffs could even base an argument. *Kramer v. Vogl,* 17 N.Y.2d 27, 31–32, 267 N.Y.S.2d 900, 903–4, 215 N.E.2d 159 (1966). But even the Maier visits to the United States (only about half a dozen over a period of 15 years, and not involving any of the crucial negotiations or discussions between the parties) cannot be the basis for a holding that any of the Maier defendants transacted business within New York State. *McKee Electric Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 37, 229 N.E.2d 604 (1967).

Karl Maier's 10% ownership of Edelstaal, which apparently existed from 1966 to 1974, did not constitute the transacting of business in New York State, under the circumstances presented in this case. *Ferrante Equipment Co. v. Lasker-Goldman Corp.,* 26 N.Y.2d 280, 283–85, 309 N.Y.S.2d 913, 916–18, 258 N.E.2d 202 (1970).

Plaintiffs also assert personal jurisdiction over the Lux defendants under C.P.L.R. § 302(a)(1), and allege that the Lux defendants transacted business in New York. There is simply no basis for this contention. The only relevant contact which any of the Lux defendants had with New York was the sending of letters by Harald Lux to the seventeen customers, and the further correspondence with six of these customers. Also, Emco-Lux sold one machine and possibly a few more machines, to parties in New York, with deliveries f. o. b. Columbus, Ohio.

■ These circumstances do not add up to the transacting of business in New York. The mere shipment of goods into New York, and the mere sending of letters into New York, is not sufficient. *Kramer v. Vogl, supra; Del Bello v. Japanese Steak House, Inc.,* 43 A.D.2d 455, 352 N.Y.S.2d 537, 540 (4th Dept. 1974).

This leaves the question of whether any of defendants can be subjected to jurisdiction because of tortious acts committed within the state, or tortious acts committed outside of the state causing injury within the state. C.P.L.R. § 302(a)(2) and (3).

The claims based on tort theories are basically alleged in the second, third, and fifth causes of action of the amended complaint. The second and third causes of action allege that the Maier defendants conspired with the Lux defendants "to breach Edelstaal's contract with Maier as well as engage in unfair competition against it." It is also alleged that the Maier and Lux defendants committed acts "calculated and designed to unlawfully trade upon the good will and popularity of Edelstaal" and that the conduct of the Maier and Lux defendants constituted unfair competition "because of the unauthorized and unlawful appropriation of Edelstaal's property rights in its customers and its exclusive contract with Maier." The fifth cause of action is against the Lux defendants only, and alleges inducement of breach of contract.

■ On the basis of the facts already described, it is clear that the Maier defendants did not commit any tortious act within New York. Thus the Maier defendants are not subject to jurisdiction under C.P.L.R. § 302(a)(2).

■ Of course, the Maier defendants committed various acts outside of New York relevant to this action. The second and third causes of action attempt to allege claims of tortious acts committed by the Maier defendants, as already described. However, foreign defendants cannot be subjected to personal jurisdiction under § 302(a)(3) on the basis of patently invalid tort allegations. I hold that the tort allegations against the Maier defendants are of this nature. If the Maier defendants committed any wrong, it was solely in the nature of a breach of contract. Plaintiffs' claim against the Maier defendants is that they were bound by a contract granting Edelstaal the exclusive right to sell the two machines in the United States. If the Maier defendants violated plaintiffs' rights in appointing the Lux defendants as distributors in the United States, this was solely a breach of contract, not a tort. Thus, the Maier defendants are not subject to personal jurisdiction under § 302(a)(3).

As to the Lux defendants, I hold that there is no sufficient showing of the commission of a tortious act within New York, within the meaning of § 302(a)(2). The mere sending of letters into New York does not constitute a tortious act within the state. *Feathers v. McLucas,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965); *Singer v. Walker,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965); *Glucoft v. Northside Savings Bank,* 86 Misc.2d 1007, 382 N.Y.S.2d 690, 691–692 (Civ.Ct.N.Y.1976). However, I find that further discovery must be held in order to resolve the question of jurisdiction over the Lux defendants under § 302(a)(3). I cannot say at this juncture that the claim of tortious activity by the Lux defendants outside of New York, causing injury to plaintiffs in the state, is so lacking in substance that it could in no event subject the Lux defendants to jurisdiction. To be sure, there are problems with the tort claims which are attempted to be pleaded against the Lux defendants. As to the claim of inducement of breach of contract, the indications are strong that this claim has no substance. The evidence thus far presented suggests that the Maier defendants sought out the Lux defendants to be the new distributor. There is little reason to believe that the Lux defendants took the initiative, or did anything to induce the Maier defendants to breach the contract with Edelstaal.

However, there still remains the claim that, once the Lux defendants had been approached by the Maier defendants, the Lux defendants conspired with the Maier defendants to violate the rights of Edelstaal, and engaged in unfair competition. Part of the claim is that Harald Lux sent letters to Edelstaal's customers in New York, and thus caused injury to plaintiffs in New York.

Neither side has fully briefed the elements which would be required in order for plaintiffs to make out a case of unfair competition against the Lux defendants. Neither side has fully briefed the question as to whether there is or is not some other tort theory which might be applicable.

In any event, there is a question under § 302(a)(3) as to whether the requirements of (i) or (ii) are met. These provisions impose the added requirements that an out-of-state defendant can be subjected to jurisdiction under § 302(a)(3), if he

"(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from the interstate or international commerce;"

The New York Supreme Court, Appellate Division, Third Department, has made a ruling on the standard to be applied in determining whether a defendant can be subjected to jurisdiction under § 302(a)(3). In *Evans v. Planned Parenthood of Broome County, Inc.,* 43 A.D.2d 996, 352 N.Y.S.2d 257 (3d Dept. 1974), the court stated:

"On this appeal, defendant . . . alleges for the first time that plaintiff was required to prove prima facie at the hearing that a tortious act was committed by defendant without the State. We do not agree. In our view, there is no requirement that the plaintiff prove a tortious act without the State (see 1 Weinstein-Korn-Miller, N.Y.Civ.Prac., par. 302.09).

Once the requirements of CPLR 302 (subd. [a], pars. 3[i] or 3[ii]) have been met, the only additional requirement is that the defendant was the author of acts without the State and that the complaint adequately frames a cause of action in tort arising from those acts."

Under the circumstances, I am deferring decision as to whether the Lux defendants are subject to jurisdiction under § 302(a)(3). Discovery will be permitted regarding the questions arising under (i) and (ii). After this discovery is completed, further briefs will be received regarding § 302(a)(3) as it relates to the Lux defendants.

## Conclusion

The motions to dismiss for lack of personal jurisdiction are granted as to the Maier

defendants, and denied as to the Lux defendants at the present time subject to renewal after discovery and further briefing. The motions of the Maier defendants to dismiss for lack of subject matter jurisdiction and for summary judgment are not reached. Limited discovery will be permitted against the Lux defendants, as specified. Details regarding location and costs of discovery will be dealt with in pre-trial conferences.

So ordered.