Thierry **VAN ESSCHE**, Plaintiff,

v.

Madeleine **LEROY** a/k/a Madeleine Carrol, **Bruce B. Hart**, and **John Doe A** through John Doe Z., Defendants.

No. 88 CIV. 1059 (PKL).

United States District Court, S.D. New York.

Aug. 24, 1988.

Berg and Duffy, Lake Success, N.Y. (James P. Duffy, III, Edward B. Reynolds, Jr., Karin E. Schult, Michael P. Gilmore, of counsel), for plaintiff.

Baker & McKenzie, New York City (Robert P. Lewis, Eric L. Schwimmer, of counsel), for defendants.

## OPINION & ORDER

LEISURE, District Judge:

This is a diversity action in which plaintiff seeks to recover for *prima facie* tort, intentional infliction of emotional distress, and tortious interference with an employment relationship. Defendants have moved, pursuant to Fed.R.Civ.P. 12(b)(2), to dismiss the complaint for lack of personal jurisdiction.

### I.

Plaintiff Thierry Van Essche, a resident and domiciliary of Monaco, is a vice president of Prudential Bache Monaco, Inc., a Delaware corporation. Prudential Bache Monaco is a branch office of Prudential–Bache Securities, Inc. ("Pru–Bache") a New York corporation. From the early 1970's until 1981, Van Essche, in his capacity as a Pru–Bache employee, provided brokerage services and investment advice to defendant Madeleine Leroy, a resident and domiciliary of California. Defendant Bruce B. Hart, Esq., practices law in Dallas, Texas, where he resides.

In 1984, Leroy instituted an action in a Canadian court which sought to recover damages from Van Essche for an allegedly fraudulent investment tip provided to Leroy by Van Essche. Hart represented Leroy in that Canadian lawsuit. On September 28, 1987, Hart mailed a letter from his Dallas law office to the Customer Service Department of Pru–Bache in New York. That letter requested that Hart be provided with copies of certain files which Hart stated were relevant to the pending Canadian action.

Plaintiff Van Essche's claims in the present action concern the September 28 letter which Hart mailed to Pru–Bache. Van Essche alleges that although the Canadian lawsuit concerned matters outside the scope of his employment at Pru–Bache, and although that suit sought to hold him liable in his personal, rather than professional, capacity, Hart nonetheless sent the September 28 letter for the sole purpose of informing Pru–Bache of the pending lawsuit. Van Essche alleges that Hart, acting on Leroy's behalf, intentionally phrased the letter to suggest that the Canadian lawsuit named Van Essche in his professional capacity, and, more importantly, to suggest that Pru–Bache might be exposed to liability for the claims raised in that suit. Van Essche claims that Hart and Leroy knew that the documents requested in Hart's letter could easily have been secured elsewhere, and knew that, in any event, Pru–Bache was not authorized to release those documents to Hart.

Van Essche alleges that as a result of Hart's letter, his superiors at Pru–Bache became extremely concerned about the Canadian litigation. Van Essche states that he was forced to obtain counsel to assure his employers that the Canadian lawsuit did not concern his professional responsibilities or expose Pru–Bache to liability. Van Essche claims that despite these efforts, his employers denied him his 1987 salary bonus, to which he claims he was otherwise entitled. Moreover, Van Essche claims that he feared the loss of his employment and suffered extreme emotional distress as a result.

Defendants have now moved to dismiss the complaint on grounds that as nondomiciliaries, they are not subject to jurisdiction in New York. Plaintiff contends, however, that defendants are subject to jurisdiction under New York's long-arm statute, either because the tort at issue in this litigation was committed in New York, or because, at the very least, the tort caused injury to a person or property in New York.

## II.

In diversity actions, a federal court must look to the long-arm statute of the forum state to determine whether personal jurisdiction exists over a nondomiciliary defendant. *United States v. First National City Bank,* 379 U.S. 378, 381, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965); *Marsh v. Kitchen,* 480 F.2d 1270, 1272 n. 6 (2d Cir.1973); F.R. Civ.P. 4(e), (f).

The New York long-arm statute, N.Y. Civ.Prac. Law § 302 (McKinney 1972 & Supp. 1988), permits, under certain specified circumstances, the exercise of personal jurisdiction when a cause of action alleges the commission of a tort, or the occurrence of an injury, within New York State. Specifically, the statute provides, in relevant part:

> Section 302. Personal jurisdiction by acts of nondomiciliaries.
>
> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent:
>
> \*     \*     \*     \*     \*     \*
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> \*     \*     \*     \*     \*     \*
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y.Civ.Prac. Law § 302.

*Defamation Exception under § 302*

■ Both § 302(a)(2) and § 302(a)(3) explicitly exempt defamation actions from the scope of long-arm jurisdiction. Defendants contend that although plaintiff's complaint does not explicitly state a cause of action for defamation, the allegations in fact state

a claim for defamation under a different name.

Defendants are correct that when determining whether to apply § 302 jurisdiction, it is to the substance of the allegations which the Court must look. In this regard, the New York courts have observed:

> In looking for the reality and the essence of the action and not its mere name, [if it is possible] to conclude from a fair reading of the complaint that plaintiff's claims do indeed sound in defamation of character, [the] cause is exempt from acts by a non-domiciliary which may serve as a basis for long-arm jurisdiction under CPLR 302(a)(2) and (3).

*Findlay v. Duthuit,* 86 A.D.2d 789, 790, 446 N.Y.S.2d 951, 953 (1st Dept. 1982) (citations omitted).

Here, Van Essche's first cause of action, for *prima facie* tort, alleges that:

> (23) Leroy [and] Hart ... maliciously contriving, planning, and scheming, and intending to ... injure Van Essche's good name and reputation, and to hold him up to ridicule, scorn and contempt, did publish and distribute the letters annexed hereto as exhibits A and B.[1]

Complaint at ¶ 23. Van Essche's second cause of action for intentional infliction of emotional distress alleges that:

> (30) Leroy has vindictively and without just cause, told people who are mutual acquaintances of her's and Van Essche's that she was "going to ruin Van Essche" and "put him in jail."

Complaint at ¶ 30. And Van Essche's third cause of action for intentional interference with an employment relationship alleges that:

> (34) Leroy [and] Hart ... maliciously and intending to injure Van Essche in his employment by causing injury to his reputation, did publish and distribute the letters annexed hereto as exhibits A and B.
>
> (35) Leroy, by her attorney Hart ... recklessly and carelessly published and

distributed the letters ... for the sole purpose of exposing Van Essche to ridicule, scorn and contempt ...

> (36) By sending exhibits A and B to Prudential Bache ... Hart, acting for Leroy ... stated and implied Van Essche was incompetent to carry out his employment duties, thereby maligning Van Essche's reputation with his employment relationship....

Complaint at ¶ ¶ 34–36.

In *Lynn v. Cohen,* 359 F.Supp. 565 (S.D. N.Y.1973), cited by defendants, the complaint contained a claim for *prima facie* tort which alleged that the defendant maliciously published a document containing false and damaging statements resulting in damage to the plaintiff's reputation. Judge Duffy held that "[i]t is difficult to see how the [relevant] 'causes of action' can be construed as anything other than allegations of damages caused by the alleged libel...." *Id.* at 569. Judge Duffy dismissed the complaint as one for libel pursuant to § 302(a)'s defamation exception. *Id.* at 570.

While defamation actions are generally based on explicitly false statements, Van Essche here bases his complaint on a letter which contained only true statements. The letter is only claimed to be tortious because the language of the letter, and its omission of certain facts, were allegedly calculated by defendants to convey the false impression that Pru–Bache could be subject to liability in the Canadian lawsuit. At least one New York court has determined that true statements used to convey a false impression can be considered "false." *See Bivas v. State,* 97 Misc.2d 524, 528, 411 N.Y.S.2d 854, 858 (N.Y.Ct.Cl.1978) ("[u]ndoubtably there is a class of statements which, though true on their face, are so incomplete as to give a false and misleading impression." (citations omitted)).

This Court need not determine whether one or more of plaintiff's causes of action does indeed state a claim for defamation,

---

1. Exhibit A is Hart's letter to Pru–Bache in New York which gave rise to this lawsuit. Exhibit B refers to a letter which Hart mailed from Dallas to Paris that is related to the subject matter of this action, but is unrelated to the question of personal jurisdiction now before the Court, since its mailing and reception occurred entirely outside of New York.

however,[2] because in any event no personal jurisdiction otherwise exists over defendants under § 302.

*Jurisdiction under § 302(a)(2)*

Section 302(a)(2) allows jurisdiction over a nondomiciliary who commits a tort within New York. Plaintiff Van Essche contends that defendants committed a tort within New York because defendants' tortious letter was mailed to Pru–Bache in New York. Van Essche relies primarily upon *Polish v. Threshold Technology Inc.*, 72 Misc.2d 610, 340 N.Y.S.2d 354 (Sup.Ct.1972), which held that a tort was committed in New York when an out-of-state defendant mailed a fraudulent letter to a plaintiff domiciled in New York.

However, in the leading case *Feathers v. McLucas*, 15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965), the New York Court of Appeals held that § 302(a)(2) provides jurisdiction only when the defendant is physically present in New York when committing a tort. In fact, in a companion case, the Court of Appeals explained:

> [t]he mere occurrence of the injury in this State certainly cannot serve to transmute an out-of-state tortious act into one committed here within the sense of the statutory working [of Section 302(a)(2) ]. Any possible doubt on this score is dispelled by the fact that the draftsmen of Section 302 pointedly announced that their purpose was to confer on the court "personal jurisdiction over a non-domiciliary *whose act in the state* gives rise to a cause of action" or, stated somewhat differently, "to subject non-residents to personal jurisdiction *when they commit acts within the state.*"

*Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 460, 209 N.E.2d 68, 77 261 N.Y.S.2d 8, 21 (1965) (emphasis in original) (citations omitted). Consistent with the Court of Appeals' analysis, the New York legislature added § 302(a)(3) in 1966 in order to extend long-arm jurisdiction over nondomiciliaries who commit torts *outside* the state, but cause injury within the state.

Accordingly, the *Polish* court's view of § 302(a)(2) has been rejected by other New York courts. *See, e.g., Bauer Industries Inc. v. Shannon Luminous Materials Co.*, 52 A.D.2d 897, 383 N.Y.S.2d 80 (2d Dept. 1976); *Glucoft v. Northside Savings Bank*, 86 Misc.2d 1007, 382 N.Y.S.2d 690 (Civ.Ct. 1976). In *Glucoft*, the court emphasized that "[t]he New York courts have given a strict interpretation to § 302(a)(2) requiring, in effect, that the defendant be physically present in New York while committing the tort." *Id.*, 86 Misc.2d at 1008, 382 N.Y.S.2d at 691 (quoting *Lynn v. Cohen*, 359 F.Supp. at 568).

Similarly, the federal courts in this Circuit have concluded that the transmission of a communication, from outside of New York into New York, by mail or telephone, is not an act committed "within the state" for purposes of Section 302(a)(2) jurisdiction. *See, e.g., Cleopatra Kohlique, Inc. v. New High Glass, Inc.*, 652 F.Supp. 1254, 1256 (E.D.N.Y.1987) ("where a defendant makes a misrepresentation outside of New York intending that it be relied upon within New York, the tort has been committed outside New York for jurisdictional purposes"); *Paul v. Premier Elec. Const. Co.*, 576 F.Supp. 384, 389 (S.D.N.Y.1983) (characterizing the *Polish* court ruling as "at best, a minority rule"); *Marine Midland Bank v. Keplinger & Associates, Inc.*, 488 F.Supp. 699 (S.D.N.Y.1980) (knowingly sending a false statement into a state intending that it be relied upon in that state is considered to be an action committed outside of the state); *American Edelstaal, Inc. v. Maier*, 460 F.Supp. 613, 620 (S.D.N.Y.1978).

On a motion to dismiss, the complaint must be read generously and every reasonable inference drawn in favor of the plaintiff. *Pross v. Katz*, 784 F.2d 455, 457 (2d Cir.1986); *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 558 (2d Cir.1985); *Metzner v. D.H. Blair & Co.,*

**2.** Although one or more of plaintiff's claims may arise out of defamation, it does not necessarily follow that all the claims arise out of defamation. *Cf. Paul v. Premier Elec. Const. Co.*, 576 F.Supp. 384, 389–90 (S.D.N.Y.1983).

*Inc.*, 663 F.Supp. 716, 719 (S.D.N.Y.1987). In the present action, however, there is no dispute that defendants are nondomiciliaries and that the sole act allegedly committed by defendants was the mailing of a tortious letter from Texas to New York. Even assuming Van Essche's allegations to be true and drawing every reasonable inference in his favor, defendants simply did not, as a matter of law, commit a tort *in* New York, and therefore no basis for personal jurisdiction exists under § 302(a)(2).

*Jurisdiction under § 302(a)(3)*

Plaintiff also attempts to predicate jurisdiction on Section 302(a)(3), which provides that one may be subject to suit in New York if one commits a tortious act outside the state, causing injury to persons or property within the state. Under § 302(a)(3), the injury within the state can be economic as well as physical. *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 205, 385 N.E.2d 1055, 1058, 413 N.Y.S.2d 127, 131 (1978) ("the statute ... does not limit the kinds of tortious acts covered to personal injury, property damage, or other noncommercial torts"). Here, plaintiff has not sustained any economic or physical injury in New York.

Our Court of Appeals discussed § 302(a)(3) jurisdiction in *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428 (2d Cir.1971). In that case, the plaintiffs were New York corporations. The defendant, a Michigan corporation which did not otherwise do business in New York, induced plaintiffs' experienced employees to leave plaintiffs' employ and to turn over to defendant confidential information about plaintiffs' business. Plaintiffs alleged that they lost customers in Pennsylvania and Kentucky as a result of defendant's actions. Plaintiffs asserted that jurisdiction existed under § 302(a)(3), claiming that defendant had committed a tort outside New York which injured plaintiffs in New York. The Court of Appeals held, however, that plaintiffs had in fact lost business solely in Pennsylvania and Kentucky and were not injured in New York. The Court, quoting *Spectacular Promotions, Inc. v. Radio Station,*

*WING*, 272 F.Supp. 734, 737 (E.D.N.Y. 1967), stated:

> [i]n determining the situs of an injury ... for jurisdictional purposes, ... there are three possibilities worth considering: (1) any place where plaintiff does business; (2) the principal place of business of the plaintiff; and (3) the place where plaintiff lost business. For purposes of a jurisdictional statute such as New York's, the first can be rejected almost out of hand; the second has more merit, and the third seems most apt. Where the plaintiff is a large national corporation, permitting it to sue in any of the fifty states in which it does business would obviously be unfair to the defendant. The main place of business of the plaintiff would have no predictable relationship with the tortious activities of the defendant. The place where the plaintiff lost business would normally be a forum reasonably foreseeable by a tortfeasor and it would usually be the place where the critical events associated with the dispute took place.

*American Eutectic*, 439 F.2d at 433.

In *American Eutectic*, the Court stressed that although "there [was] no question that plaintiffs suffered some harm in New York in the sense that any sale lost anywhere in the United States affects their profits[,] that sort of derivative commercial injury in the state [was] only the result of plaintiffs' domicile [t]here," and was not an "injury in New York" for the purposes of § 302(a)(3). *Id.* In other words, § 302(a)(3) requires that the injury itself be incurred in the State— its mere reflection "on the books" in New York is not sufficient.

■ Generally, it is well established "that an injury does not occur in New York simply because the plaintiff is domiciled, incorporated or doing business there." *Dogan v. Harbert Const. Corp.*, 507 F.Supp. 254, 262 (S.D.N.Y.1980) (citing *American Eutectic*, 439 F.2d at 433; *Friedr. Zoellner (New York) Corp. v. Tex Metals Co.*, 396 F.2d 300, 303 (2d Cir.1968)). Conversely, where business and customers are indeed lost in New York State, jurisdiction can be

sustained in New York even when the plaintiff is a non-resident. *See, e.g., Granada Television, Intern., Ltd. v. Lorindy Pictures Intern. Inc.*, 606 F.Supp. 68 (S.D. N.Y.1984); *Broadcasting Rights Intern. Corp. v. Societe Du Tour De France S.A. R.L.*, 675 F.Supp. 1439 (S.D.N.Y.1987).

The courts have similarly determined the locus of physical injuries for purposes of § 302(a)(3). For example, in *Black v. Oberle Rentals, Inc.*, 55 Misc.2d 398, 400, 285 N.Y.S.2d 226, 229 (Sup.Ct.1967), the court stated:

> it is difficult for this court to hold that [a plaintiff who suffers] a personal or property injury in another state by virtue of a tortious act committed in that state can be said to have suffered some injury within the State of New York simply because he is domiciled here.

*See also, Ross v. Colorado Outward Bound School, Inc.*, 603 F.Supp. 306, 308 (W.D.N.Y.1985); *Kramer v. Hotel Los Monteros S.A.*, 57 A.D.2d 756, 757, 394 N.Y.S.2d 415, 416 (1st Dept.1977).

■ In the present action, Van Essche alleges two economic injuries: first, that he lost his 1987 salary bonus, and second, that he paid attorneys fees to assuage his employers' concerns about Leroy's Canadian lawsuit. Plaintiff, however, is employed in Monaco, deals with Pru–Bache solely from Monaco, and earns and spends his salary in Monaco. The physical injury alleged by plaintiff is the emotional distress he suffered as a result of defendants' actions. However, plaintiff has never suffered from emotional distress in New York because he is not, and has not been, present in New York at any time relevant to this action.

Plaintiff is correct to note that events took place in New York that triggered the alleged injuries in Monaco. Nevertheless, it is the locus of the injury, and not the place of its trigger, which determines the location of the *injury*—as opposed to where the tort occurs—for § 302(a)(3) purposes.

*Due Process*

■ Even were Van Essche's claims to satisfy the terms of New York's long-arm statute, it would still be necessary for this Court to determine whether the contacts supporting jurisdiction satisfy the requirements of due process enunciated in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. The due process inquiry focuses on "the relationship between the defendant, the forum, and the litigation." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579–80, 53 L.Ed.2d 683 (1977)). *See generally* Brilmayer, *How Contacts Count: Due Process Limitations on State Court Jurisdiction*, 1980 Sup.Ct.Rev. 77.

The Second Circuit recently considered facts similar to those here in the due process context. In *Fox v. Boucher*, 794 F.2d 34 (2d Cir.1986), a landlord brought an action for *prima facie* tort against the father of a tenant. The defendant was a resident of Massachusetts. The plaintiff landlord alleged only that the defendant made a single telephone call from Massachusetts to the plaintiff in New York, and that the comments of the defendant during that phone call caused the plaintiff extreme mental and physical suffering. Finding that the defendant's contacts with New York were not sufficient to satisfy due process, the Court held that:

> [o]ne single telephone call made to New York State is insufficient contact to support a suit initiated in that forum against an out-of-state resident under either the contract or tort provisions of CPLR 302. The mere possibility of foreseeable consequences in New York does not give New York *in personam* jurisdiction. As the Supreme Court states there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." It would offend "minimum contacts" due process principles to force [the defendant], a Massachusetts resident, to litigate in a New York forum on the basis of one telephone call.

*Id.* at 37 (citations omitted).

The Court's broad language in *Fox* appears to reach the facts of the present

case—particularly since there appears no meaningful distinction, for jurisdictional purposes, between a telephone call and a letter. While other circuit courts have adopted a less stringent standard for minimum contacts in this context,[3] the holding in *Fox* appears to apply here.

## CONCLUSION

Because the alleged tort committed by defendants occurred in Texas, and because the alleged injury was sustained by plaintiff in Monaco, no jurisdiction exists over defendants under either § 302(a)(2) or (3) of New York's long-arm statute. Plaintiff's claim is therefore dismissed.

SO ORDERED.

---

**3.** In *Brown v. Flowers Industries, Inc.,* 688 F.2d 328 (5th Cir.1982), *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983), the Fifth Circuit held that a single defamatory telephone call from out of state (classified as tortious conduct outside the state causing injury in the state) was sufficient for due process purposes. Judge Rubin, writing for the Court, emphasized that "the number of contacts with the forum state is not, by itself, determinative.... What is more significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state." *Id.* at 333 (citations omitted). The Court considered relevant (1) the injurious effect within the forum, felt entirely by a resident of the forum; (2) the foreseeability of the consequences in the forum state; (3) the interest of the state in providing a forum; (4) the relative conveniences of the parties; (5) the residence of the witnesses, other than the plaintiff and the defendant, within the forum state, and (6) that the alleged tortious act was intentional. *Id.* at 333–34. *See also Vishay Intertechnology, Inc. v. Delta Intern. Corp.,* 696 F.2d 1062, 1068–69 (4th Cir.1982); *Froess v. Bulman,* 610 F.Supp. 332, 336–37 (D.R.I.1984) (a single defamatory letter, the sole contact of the defendant with the forum, was sufficient for due process purposes).

In *First American First, Inc. v. National Ass'n of Bank Women,* 802 F.2d 1511, 1516 (4th Cir. 1986), the Fourth Circuit held that "a single contact by a non-resident defendant may, if sufficiently 'purposeful' in its aim at, and sufficiently egregious in its impact upon, a forum state's legitimate interests, support a constitutional exercise of specific jurisdiction in respect of a claim arising from that very conduct." (citation omitted). *See also Murphy v. Erwin-Wasey, Inc.,* 460 F.2d 661 (1st Cir.1972) (when contact with the forum is intentional and is the source of the cause of action, the element of intent overcomes objections to the assertion of jurisdiction over out-of-state defendants); *David v. Weitzman,* 677 F.Supp. 95 (D.Conn.1987) (exercise of personal jurisdiction over out-of-state defendants would not offend due process when defendants purposely availed themselves of Connecticut's laws by a fraudulent misrepresentation to Connecticut plaintiff).

*But see Margoles v. Johns,* 483 F.2d 1212, 1219 (D.C.Cir.*1973*) (criticizing the holding in *Murphy,* supra); *Peterson v. Kennedy,* 771 F.2d 1244, 1262 (9th Cir.1985) *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986) ("[b]oth this court and the courts of California have concluded that ordinarily 'use of mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.' ") (citation omitted).