**Martin HEINFLING, Plaintiff,**

**v.**

**Pina Maria COLAPINTO, Mervyn H. Wolf, William Soltis, The Los Angeles County Sheriff's Department, and Donald Zelinsky, Defendants.**

**No. 96 Civ. 1757 (SAS).**

United States District Court, S.D. New York.

Oct. 22, 1996.

Linda T. Armatti–Epstein, Mineola, NY, for Plaintiff Martin Heinfling.

Monica R. Jacobson, New York City, Mervyn H. Wolf, Appell & Wolf, Encino, CA, for Defendants: William Soltis, Los Angeles County Sheriff's Department and County of Los Angeles.

Patrick F. Broderick, Bayside, NY, for Defendant Donald Zelinsky.

Pina Maria Colapinto, Sherman Oaks, CA, Pro Se.

*MEMORANDUM OPINION*

SCHEINDLIN, District Judge.

## I. INTRODUCTION

Defendants William Soltis ("Soltis"), The Los Angeles County Sheriff's Department (collectively the "LA County Defendants"), Mervyn H. Wolf ("Wolf"), and Donald Zelinsky ("Zelinsky") move, pursuant to Fed. R.Civ.P. 12(b)(2), to dismiss this action for lack of personal jurisdiction. The LA County Defendants also move to dismiss Plaintiff's state law claim for abuse of process as barred by the statute of limitations, and to dismiss Plaintiff's §§ 1983 and 1985(3) claims pursuant to Fed.R.Civ.P. 12(b)(6). In addition, Defendants Wolf and Zelinsky move to dismiss Plaintiff's abuse of process claim pursuant to Rule 12(b)(6). For the reasons set forth below, the motions to dismiss under Rule 12(b)(2) are granted as to Wolf, Zelinsky, and the LA County Defendants, and under Rule 12(b)(6) as to all Defendants, including Defendant Pina Maria Colapinto ("Colapinto").

## II. BACKGROUND

Plaintiff Martin Heinfling and Defendant Colapinto have been embroiled in a bitter and ongoing child support dispute for several years. Plaintiff alleges that Defendants conspired to force him into a child support settlement favorable to Colapinto by means of a scheme that involved Colapinto's filing of allegedly false criminal charges against him under the "advice" · and with the help of Defendant Soltis, a Los Angeles County Deputy Sheriff.[1] This filing allegedly was followed by threats and promises by Soltis and by Defendants Wolf and Zelinsky, both attorneys for Colapinto, to have the charges dismissed if Plaintiff would cooperate with a generous settlement.

Plaintiff originally filed this action in February 1996 in New York State Supreme Court, New York County. All of the Defendants in this action are California residents, while Plaintiff contends that he is a resident of both New York and Florida. Defendants

---

1. The charges were Attempted Assault in the Third Degree, Criminal Possession of a Weapon in the Fourth Degree, and Criminal Possession of a Substance in the Seventh Degree. Plaintiff alleges that these charges were later dismissed in September 1994 pursuant to N.Y.Crim.Proc.Law § 30.30 (The Speedy Trial Rule). *See* Complaint ¶ 26.

removed this action to federal court pursuant to 28 U.S.C. § 1441(a) because of diversity of citizenship under 28 U.S.C. § 1332(a)(1), and because the Complaint asserts a claim arising under the Constitution and laws of the United States under 28 U.S.C. § 1331. After removal, the LA County Defendants moved to dismiss for lack of personal jurisdiction. Plaintiff served Defendants with an Amended Complaint and that motion was withdrawn. The LA County Defendants, and Defendants Wolf and Zelinsky now move to dismiss the Amended Complaint.

The Amended Complaint includes allegations of events that occurred in California prior to and not at issue in this action. However, the gist of the California allegations is the same as those alleged here and provides useful background for Plaintiff's New York claims. Plaintiff alleges that during the pendency of child support proceedings in California, Colapinto, with the assistance of her co-Defendants, "continuously brought criminal charges against Plaintiff" in California "in an effort to secure a generous support settlement." Am.Compl. ¶ 13. Plaintiff acknowledges that he pled "no contest" to some of these charges. *Id.* at ¶ 14. He also alleges that prior to being arrested for domestic violence charges in November 1992 by Defendant Soltis, Soltis assaulted Plaintiff and fractured Plaintiff's ribs. *Id.* at ¶ 16. Plaintiff contends that during the assault, Soltis threatened him either to settle the child support matter or to face more criminal charges, and used anti-Semitic ethnic slurs. *Id.*

In October 1993, Colapinto filed a criminal complaint in New York. *Id.* at ¶ 18. Plaintiff alleges that prior to his arraignment on these charges, Soltis advised the New York County District Attorney's office that Plaintiff was a fugitive in California on criminal misdemeanor charges, for which bail had been set at $500,000. *Id.* at ¶ 19. Plaintiff concedes that he was a fugitive, but despite this he was released on his own recognizance in the New York matter. *Id.* at ¶ 20.

Pending disposition of the criminal charges, an Order of Protection was issued against Plaintiff on behalf of Colapinto. *Id.* at 21. This Order was lifted in February 1994. *Id.* at ¶ 22. Plaintiff alleges that soon after, Defendant Wolf contacted the District Attorney's office to urge that the Order be reinstated because Plaintiff had threatened Colapinto immediately upon the vacating of the Order. *Id.* Plaintiff does not allege that the Order was reinstated, nor does he deny that he threatened Colapinto.

Plaintiff states that throughout this period, Wolf and Zelinsky contacted him several times in New York by telephone or mail from California and advised him that if he settled the child support matter, Colapinto would "do all she can to have the criminal charges dropped." *Id.* at ¶¶ 23, 24. Plaintiff alleges that Wolf accompanied Colapinto to New York on one occasion, and gave the same advice over the telephone from New York. *Id.* at ¶ 23. Plaintiff contends that Soltis also contacted Plaintiff by telephone from California and suggested that it "would be to Plaintiff's benefit to settle the child support" matter, and threatened him with felony charges if the matter were not settled. *Id.* at ¶ 25. He also alleges that Soltis contacted Plaintiff's employee and his mother to suggest the same, making anti-Semitic remarks to Plaintiff's mother in the process. *Id.*

Plaintiff asserts that his arrest for the allegedly false charges was an abuse of process under New York State law. *Id.* at ¶¶ 27–38. He further contends that Defendant Soltis was motivated by anti-Semitic animus, and therefore that the Defendants conspired to deprive him of his Fifth and Fourteenth Amendment right to liberty in violation of 42 U.S.C. § 1985(3). *Id.* at ¶¶ 39–48. Plaintiff brings the abuse of process and § 1985(3) claims against all of the Defendants. He also alleges that Soltis was acting under color of state law when he advised Colapinto to file false charges in New York, and that Soltis' actions deprived Plaintiff of his Fourteenth Amendment right to liberty in violation of 42 U.S.C. § 1983. *Id.* at ¶¶ 49–55. Plaintiff brings this cause of action against the LA County Defendants only. He seeks damages of $30 million for loss of business opportunities, damage to his reputation, pain and suffering, medical bills, and legal fees. *Id.* at ¶¶ 38, 48, 55.

## III. DISCUSSION

### A. *Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction*

 Faced with a motion ▾ to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), the plaintiff shoulders the ultimate burden of establishing jurisdiction over the defendant by a preponderance of the evidence. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). When a defendant brings a Rule 12(b)(2) motion prior to discovery, however, the plaintiff is required only to make out a prima facie case for jurisdiction by pleadings and affidavits. *CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). The evidence thus presented is to be construed in the light most favorable to the plaintiff, with all doubts resolved in plaintiff's favor. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

 None of the Defendants resides in the State of New York, nor was any Defendant served with process within New York. However, a federal court can assert jurisdiction over a non-resident defendant under the long-arm statute of the state in which it sits if such jurisdiction comports with constitutional due process. *United States v. Montreal Trust Co.,* 358 F.2d 239, 240 (2d Cir.), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). *See also Hoffritz,* 763 F.2d at 57 ("Personal jurisdiction over a defendant in a diversity action is determined by reference to the law of the jurisdiction in which the court sits."); *Pilates, Inc. v. Pilates Institute, Inc.,* 891 F.Supp. 175, 179 (S.D.N.Y.1995) (personal jurisdiction in federal question action depends on state law of jurisdiction). Plaintiff asserts that he has personal jurisdiction over each of these defendants under New York's long-arm statute, N.Y.Civ.Prac.L. & R. ("CPLR") § 302(a)(2), which provides in relevant part that "a court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent ... commits a tortious act within the state...." Section 302 does not confer general jurisdiction; rather, the cause of action must arise from the tortious act that is the basis of the claim.

### 1. *Presence*

 New York law precludes an assertion of jurisdiction under § 302(a)(2) unless the defendant is physically present within the state when the tortious act is committed. *See Kramer v. Vogl,* 17 N.Y.2d 27, 267 N.Y.S.2d 900, 903, 215 N.E.2d 159, 161 (1966); *Department of Economic Development v. Arthur Andersen & Co.,* 747 F.Supp. 922, 929 (S.D.N.Y.1990). The tortious act of which Plaintiff complains is abuse of process, which requires (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective. *Curiano v. Suozzi,* 63 N.Y.2d 113, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324, 1326 (1984). A malicious motive alone does not give rise to an abuse of process claim. *Id.*

 Assuming arguendo that the Defendants' collective acts would constitute abuse of process, Zelinsky's and the LA County Defendants' individual acts were not committed in New York, while Wolf made only one telephone call from within New York. Telephone calls placed and letters mailed from outside the state into New York do not constitute tortious acts committed "within the state" for purposes of § 302(a)(2). *Beckett v. Prudential Insurance Co. of America,* 893 F.Supp. 234, 239 (S.D.N.Y.1995); *Van Essche v. Leroy,* 692 F.Supp. 320, 324 (S.D.N.Y.1988) (mailing of tortious letter from Texas to New York did not give rise to jurisdiction under § 302(a)(2) because mailing was not act committed in New York); *Marine Midland Bank v. Keplinger and Assoc., Inc.,* 488 F.Supp. 699 (S.D.N.Y.1980). Each of the alleged calls and letters, with the exception of one call from Defendant Wolf, originated outside New York. Under the relevant case law, these Defendants have not committed a tortious act within New York for purposes of § 302(a)(2).[2]

---

**2.** Nor can the alleged single phone call Wolf made to Plaintiff while accompanying Colapinto to New York provide the basis for long-arm juris-

diction over Wolf. It is unlikely that Wolf's call, standing alone, constitutes an abuse of process such that Wolf can be said to have committed a

## 2. *Agency*

■ Plaintiff alternatively relies upon an agency theory based on an alleged conspiracy between Defendant Colapinto and the other Defendants. He claims that because the Defendants are co-conspirators, Colapinto's filing of a false complaint in New York can be imputed to the other Defendants for jurisdictional purposes.

■ A co-conspirator may be an "agent" as that term is used in § 302(a)(2). *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122–23 (2d Cir.1981). Under New York law, however, conspiracy itself is not a tort, but " 'merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act' " committed by a co-conspirator. *Id.* at 123 (quoting *Rutkin v. Reinfeld,* 229 F.2d 248, 252 (2d Cir.), *cert. denied,* 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956)). Before an agency relationship will be held to exist under New York law, the plaintiff must allege a prima facie case of conspiracy, as well as a "sufficient relationship between the defendant and the conspiracy to warrant the inference that defendant was a member of the conspiracy." *Chrysler Capital Corp. v. Century Power Corp.,* 778 F.Supp. 1260, 1268–69 (S.D.N.Y.1991). Section 302(a)(2) does not require a formal agency relationship, but before long-arm jurisdiction can be exercised over an out-of-state co-conspirator, the plaintiff must show that (1) the out-of-state co-conspirator had an awareness of the effects of the activity in New York, (2) the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators. *Id.* at 1269; *see also Grove Press,* 649 F.2d at 122 (alleged agent must act in New York "for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal").

tortious act within New York for jurisdictional purposes. Nor would such an exercise of jurisdiction be likely to satisfy a constitutional minimum contacts analysis. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90

Even assuming for the purposes of this motion that Plaintiff has presented a prima facie case of conspiracy, Plaintiff has failed to show that Colapinto's acts in New York were for the benefit of her punative out-of-state co-conspirators. In fact, Plaintiff has not alleged a single fact in relationship to any claim that suggests any type of benefit to anyone but Colapinto herself—namely, the favorable child support settlement. Nor does Plaintiff allege that Colapinto was under the control of, or acted at the request of, her out-of-state co-conspirators. Plaintiff makes no allegation relating to Wolf's or Zelinsky's control of Colapinto's activities: his sole contention in this regard is that Colapinto acted "under the advice" of Soltis. This bare allegation alone does not suffice to show that she was controlled by Soltis, or was acting at his request.

Because Plaintiff has failed to allege any benefit to Wolf, Zelinsky, or the LA County Defendants deriving from the alleged conspiracy, or that these Defendants either controlled or requested Colapinto's acts in New York, Colapinto's acts as "agent" cannot be imputed to them. Absent a viable theory of agency, this Court cannot assert long-arm jurisdiction over Wolf, Zelinsky, or the LA County Defendants pursuant to § 302(a)(2). These Defendants' motions to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction are granted.

### B. *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim*

In addition, Plaintiff has failed to state a claim upon which relief can be granted, and the Amended Complaint is therefore dismissed as to all Defendants. Plaintiff alleges three causes of action: abuse of process, conspiracy to deprive him of his Fifth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1985(3), and deprivation of his Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

L.Ed. 95 (1945). In any event, Plaintiff has not stated a claim against Wolf upon which relief can be granted, and his claims against Wolf are also dismissed pursuant to Rule 12(b)(6). *See* Part III.B, below.

In the context of a motion to dismiss for failure to state a claim, the allegations in the complaint must be accepted as true, with all reasonable inferences being drawn in favor of the plaintiff. *Annis v. County of Westchester*, 36 F.3d 251, 253 (2d Cir.1994). An action cannot be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts" that would entitle the plaintiff to relief. *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

■ Plaintiff's abuse of process claim against all of the Defendants must be dismissed because it is barred by New York's one year statute of limitations. CPLR § 215(3); *Riddell Sports Inc. v. Brooks*, 872 F.Supp. 73 (S.D.N.Y.1995). Colapinto filed the criminal complaint in October 1993. This action was not commenced until February 1996, over two years later. Plaintiff admits that the one year statute of limitations is applicable. *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint ("Pl.s Mem.") at 7. Accordingly, Plaintiff's abuse of process claim is time-barred and is dismissed against all of the Defendants.

■ Nor has plaintiff stated a claim under § 1983, which requires that Plaintiff allege that the Defendants deprived him of a right secured by the Constitution or laws of the United States while acting under color of state law. 42 U.S.C. § 1983; *Rendell–Baker v. Kohn*, 457 U.S. 830, 835, 102 S.Ct. 2764, 2768, 73 L.Ed.2d 418 (1982). Plaintiff brings this cause of action against the LA County Defendants only. *See* Am.Compl. ¶¶ 49–55. First, this cause of action must be dismissed against the Sheriff's Department because Plaintiff has made no allegations concerning this Defendant. Second, Plaintiff's allegations against Soltis are deficient. Plaintiff alleges that he was arrested as a result of the charges that Soltis advised Colapinto to file in New York, which deprived him of his Fourteenth Amendment right to liberty, and that those charges were later dismissed pursuant to the New York Speedy Trial Rule. Elsewhere in the Amended Complaint, Plaintiff alleges that Soltis knew the charges were false.

However, " 'general allegations of cooperation' between private individuals and specific state agents do not make out a claim of action taken under color of state law." *Singer v. Bell*, 613 F.Supp. 198, 202 (S.D.N.Y. 1985) (citing *Annunziato v. The Gan, Inc.*, 744 F.2d 244, 251 (2d Cir.1984)). Here, viewed in its best light, Plaintiff has alleged just that: cooperation between Soltis and Colapinto. Soltis did not file the criminal charges against Plaintiff in New York; at most, Soltis advised Colapinto to file criminal charges on her own behalf. Plaintiff has therefore failed to show that Soltis' alleged involvement with the filing of the criminal complaint in New York was an action taken under color of state law. This claim against the LA County Defendants is also dismissed.

■ Finally, Plaintiff's 42 U.S.C. § 1985(3) claim against all of the Defendants fails as well. The statute provides, in relevant part:

> If two or more persons ... conspire ... for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws ... the party injured may ... have an action for damages ... against any one or more of the conspirators.

The conspiracy must be motivated by some racial or other class-based invidiously discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

Plaintiff claims that the alleged conspiracy to deprive him of his right to liberty was in part motivated by a discriminatory animus toward Jewish people, because Defendant Soltis allegedly made anti-Semitic remarks to Plaintiff and to Plaintiff's mother. However, the statute clearly states that "two or more persons" must conspire "for the purpose of depriving ... [the plaintiff] of equal protection of the laws." Presuming for purposes of this motion that Soltis harbored invidiously discriminatory animus toward Jewish people, and that his advice to Colapinto derived from that animus, his feelings alone do not satisfy the requirements of § 1985(3). Plaintiff does not contend that any other member of the

alleged conspiracy was motivated by anti-Semitic animus.[3] Simply stated, Soltis could not conspire with himself under § 1985(3). Moreover, Plaintiff plainly states that Defendants "conspired to institute and proceed with said charges in an effort to force Plaintiff into settling a civil child support manner." Am.Compl. ¶ 46. A conspiracy formed for this purpose would not deprive Plaintiff of his right to equal protection. Because Plaintiff has not stated a claim under § 1985(3), this claim must be dismissed against all of the Defendants.

## III. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted, and the claims against all Defendants are dismissed.

SO ORDERED.

---

**3.** In fact, in Plaintiff's opposition papers, he asserts that Soltis' alleged animus alone serves as the basis for Plaintiff's § 1985(3) claim. *See* Pl.'s Mem. at 11–12.